593 P.2d 656

**CARDON OIL COMPANY, an Arizona Corporation, and Cardon Investments, a partnership, Appellants,**

v.

**CITY OF PHOENIX, a municipal corporation, Appellee.**

No. 13557.

Supreme Court of Arizona, In Division.

March 28, 1979.

Rehearing Denied April 24, 1979.

Gove L. Allen, Mesa, for appellants.

Andy Baumert, III, Phoenix City Atty. by Edward P. Reeder, Asst. City Atty., Phoenix, for appellee.

HOLOHAN, Justice.

Appellant Cardon Oil Co. brought an action against the city seeking a declaratory judgment that the city's rezoning of appellants' property was invalid, or in the alternative asking for damages for the taking of its property by inverse condemnation. The trial court entered judgment in favor of the City of Phoenix on both counts, and Cardon appeals. We have jurisdiction pursuant to 17A A.R.S. Rules of Civil Appellate Procedure, rule 19(e).

In 1967 Cardon Oil Company purchased a lot at the corner of 48th Street and Broadway, a short distance from the 48th Street off ramp of the Maricopa Freeway. Cardon built a service station on the lot. In order to draw freeway traffic to the station, Cardon planned to erect a sign near the freeway off ramp. At the time it purchased the station lot it contracted with the owner to buy a 10′ × 60′ parcel of land next to the freeway. When Cardon purchased the 10′ × 60′ lot, that land and the adjacent property to the west was zoned for industrial use. The east edge of the lot bordered upon a 120-foot-wide utility easement zoned for residential use.

About a year later the surrounding land was purchased by Hallcraft Homes Corp. Hallcraft planned to build condominiums on its land, and for that reason the area west of the easement was rezoned for residential use. The 10′ × 60′ lot remained industrial, but was now totally surrounded by residential land. Shortly after the Hallcraft land was rezoned, Cardon applied to the City of Phoenix for a variance to erect a sign. The variance was necessary because a city ordinance prohibited illuminated signs which would be visible from residences, and it required signs to be set back from lot lines abutting on residential property. When Cardon made its first application for a variance, the zoning ordinances would have permitted only a ten-foot-high, nonilluminated sign. Cardon wanted to erect a 48-foot illuminated sign. The city denied its request. Cardon appealed to the superior court. The city argued that the variance was not necessary because other signs in the area had been erected which stood only 20 to 25 feet in height. The superior court denied Cardon's petition without prejudice to the right of Cardon to file a new application for variance.

In January 1972, while Cardon's first request for variance was pending, city planning officials recommended that the 10′ × 60′ lot be rezoned residential. No formal action was taken at that time.

Following the superior court's decision, Cardon applied for a second variance. This application was a more modest request for a 20-foot-high, nonilluminated sign. This request was denied on January 16, 1973. That same day Cardon asked the subdivision committee to approve the lot split which had created the 10′ × 60′ lot several years earlier. (City planners had noted repeatedly in the earlier proceedings that this approval had never been obtained.) Two months later the committee approved that lot split. City planning officials immediately responded to this by formally seeking to have the 10′ × 60′ lot rezoned residential. Cardon objected to the rezoning, and no one other than city planning officials spoke in support of it. Nevertheless, on November 8, 1973, the city rezoned the 10′ × 60′ lot for residential use, making it impossible for Cardon to obtain a variance to erect any sign.[1]

1. The variances that appellants originally sought were in the nature of *area* variances, i. e. permission to go beyond the restrictions limiting the size of the sign permitted. After the rezoning of appellants' property, appellants would need a *use* variance, i. e. permission to use the land to erect a sign, a use totally prohibited by the applicable zoning law. *See Ivancovich v. City of Tucson Board of Adjustment,* 22 Ariz.App. 530, 529 P.2d 242 (1975). The board probably would not have had the power to grant such a variance for a residential lot because that would have amounted to a rezoning of the property back to industrial use. *See*

Cardon then brought an action in superior court, setting forth four claims for relief. The first and the fourth involved defendants other than the City of Phoenix and were disposed of by summary judgment in favor of. those defendants. From those judgments no appeal was taken. The second claim sought a declaratory judgment allowing Cardon to erect a sign 20 feet high on the property. The third claim alleged in the alternative that the rezoning of Cardon's property to residential use amounted to a taking of the property for which Cardon was entitled to compensation under the theory of inverse condemnation.

█ The trial court granted the city's motion for summary judgment on the third claim, and tried the second claim without a jury. In a post-trial memorandum, Cardon modified its request for declaratory judgment, asking that the court merely find the rezoning of its property invalid.[2] The court found the rezoning to be a valid exercise of the police power and denied relief to Cardon.

Cardon preserved its right to appeal the court's decision on both the second and third claims. In their brief, however, the appellants have limited their discussion to the second claim. Therefore the only issue properly before this court is whether the rezoning of the 10' × 60' lot was a valid exercise of the police power.

█ Zoning is a legislative act. *City of Phoenix v. Fehlner*, 90 Ariz. 13, 363 P.2d 607 (1961). The court's role is not to pass judgment upon the wisdom of a zoning decision, but merely to scrutinize the act to determine that it meets constitutional standards. *City of Phoenix v. Oglesby*, 112 Ariz. 64, 537 P.2d 934 (1975). The principal constitutional test applied to zoning decisions is whether the zoning bears any substantial relation to the public health, safety, morals or general welfare. *City of Tucson v. Arizona Mortuary*, 34 Ariz. 495, 272 P. 923 (1928). When zoning power is used in such a way that the attempted regulation amounts to a "taking" of property, the zoning ordinance runs into direct conflict with A.R.S. Const. art. 2, § 17, which prohibits government from taking private property without just compensation to the owner.

A mere decrease in property value caused by rezoning does not constitute a taking.

"To establish that the [zoning ordinance] is confiscatory in effect, it must be shown that the zoning restrictions prevent the use of the property for any purpose to which it reasonably might be adapted." *City of Phoenix v. Oglesby*, 112 Ariz. at 66, 537 P.2d at 936.

█ In the present case the trial court found that the property in question had some use prior to the rezoning. The effect of rezoning the property was to render it useless. This amounts to a confiscation of property without compensation, making the attempted rezoning void. *City of Phoenix v. Oglesby, supra; Davis v. Pima County*, 121 Ariz. 343, 590 P.2d 459 (Ct.App.1978).

Phoenix City Code §§ 29–9(e)(4)(E) and 29–9(f)(3).

A.R.S. § 9–462.06(H)(1) now specifically prohibits a board of adjustment from changing any of the uses permitted in a zoning classification. This provision first took effect January 1, 1974, approximately two months after the city rezoned appellants' lot. Its predecessor, A.R.S. § 9–465(C), did not contain this specific prohibition. However, for purposes of this case the parties agree that the rezoning effectively removed any authority the board may have had to grant a variance to allow appellants to erect a sign.

2. The granting of a variance is within the sound discretion of the board of adjustment (in this case the board of sign appeals) and not a matter which can be mandated by the courts. *See*

*Manning v. Reilly*, 2 Ariz.App. 310, 408 P.2d 414 (1965); *see also City of Phoenix v. Superior Court of Maricopa County*, 110 Ariz. 155, 515 P.2d 1175 (1973). To the extent that appellants' original pleadings asked for declaratory judgment allowing them to erect a sign 20 feet high, appellants were seeking a variance. Such relief could not have been granted by the superior court. Appellants' post-trial memorandum asked that the court merely find the rezoning invalid and remand the case to the board of adjustment. 16 A.R.S. Rules of Civil Procedure, rule 15(b) allows pleadings to be amended at any time to conform to the evidence and issues presented. For purposes of this appeal, we deem the original complaint to have been so amended.

Prior to this rezoning the city had already taken steps that it apparently considered adequate to protect residential areas by establishing setback requirements and limits on illumination of signs abutting residential properties. *See* Phoenix City Code § 29–54(e)(4) and (9). To single out appellants' property and rezone it as added protection against the possible erection of a sign is arbitrary and unreasonable. The city has gone beyond its need to protect the health, safety and welfare of the community while completely disregarding Cardon's interest in using the property.

■ In answer to the contention that the property had been "taken," the city at one point argued that the 10′ × 60′ lot could be used as residential property in conjunction with the surrounding land. This concept, sometimes referred to as the "hypothesized lot" theory, appears to be generally rejected by the courts. *See, e. g., Ritenour v. Dearborn Township,* 326 Mich. 242, 40 N.W.2d 137 (1949); *Land Purchasing Corp. of America v. Grunewald,* 20 Misc.2d 175, 195 N.Y.S.2d 69 (1959); *Kent County Land Co. v. Zoning Board of Review of City of Warwick,* 100 R.I. 418, 216 A.2d 511 (1966). We also reject this theory, both in principle and as it applies to the appellants. If a landowner's only alternatives after rezoning are to buy adjoining land or to sell his land for whatever the market will bear, this is an excessive restriction upon the use of property. In such a situation the surrounding land may well be unavailable to the landowner whose property is useless without it, or surrounding landowners may take advantage of his predicament by seeking exorbitant prices for what land they consent to sell. The landowner's other alternative, to sell off his property for what he can get, is no less objectionable. Appellants' case exemplifies one of the potential problems with this alternative. The land surrounding appellants' property has already been developed for residential purposes. Because of a five-foot-high wall separating

these residences from appellants' land, the neighbors would have no use for the 10′ × 60′ lot and would certainly be unwilling to pay even a nominal price for the land.

By this holding we do not mean to imply that individuals may create peculiar little parcels of land usable for only one or two purposes and thereby insure themselves against the eventuality of zoning restrictions.[3] Appellants' land is still subject to the existing restrictions applicable to all industrial property abutting residential zones. We leave to the sound discretion of the appropriate city board the decision whether any area variance might be appropriate in appellants' case.

The relief we grant appellants appears perhaps a pyrrhic victory; nevertheless we cannot condone the city's use of zoning powers without regard to the property rights destroyed in the process.

The judgment of the superior court is reversed only on the second claim, and the trial court is directed to enter judgment setting aside the zoning action of the city rezoning appellants' parcel as residential. The judgment of the superior court on the remaining issues is affirmed.

CAMERON, C. J., and HAYS, J., concurring.

---

**3.** The city's authority to govern the splitting of parcels of land should help to protect it against future problems of this nature. *See* A.R.S.

§ 9–463.01(K); Phoenix City Code §§ 32–3, *Subdivisions* (b) & (f); 32–37 *et seq.*