600 P.2d 37

**PIMA COUNTY, Pima County Board of Supervisors, sitting as the Authorized Pima County Floodplain Board, Plaintiff/Appellee,**

v.

**John CARDI, dba Cardi Construction, Defendant/Appellant.**

**No. 2 CA–CIV 3164.**

Court of Appeals of Arizona, Division 2.

June 5, 1979.

Rehearing Denied July 11, 1979.

Review Denied Sept. 6, 1979.

Stephen D. Neely, Pima County Atty. by Peter E. Pearman, Deputy County Atty., Tucson, for plaintiff/appellee.

Slutes, Browning, Zlaket & Sakrison, P. C. by James M. Sakrison and John A. Pelander, Tucson, for defendant/appellant.

## OPINION

HATHAWAY, Judge.

This appeal seeks review of a partial summary judgment in favor of Pima County on Counts I and II of its amended complaint and a denial of appellant's motion to dismiss these counts. The judgment permanently enjoined appellant from excavating sand and gravel without first obtaining a permit. We reverse.

Count I alleged that appellant had been excavating sand and gravel without obtaining the permit required by statute and ordinance, and sought to enjoin the excavation until appellant obtained the permit. Count II alleged that because of the failure to obtain the permit, appellant's excavation constituted a nuisance per se under A.R.S. § 45–2344,[1] and sought to enjoin the excavation. Count III alleged that appellant's method of operation was hazardous and constituted a public and a private nuisance, and sought to enjoin the excavation unless appellant agreed to satisfy conditions of operation specified by the court. By granting partial summary judgment, the trial court reserved the question of whether appellant's operation was hazardous and ruled that regardless of its hazardousness, appellant must obtain a permit to continue to excavate.

Pima County bases its claim that appellant must obtain a permit on A.R.S. §§ 45–2341 to 2346 (effective August 8, 1973), The Floodplain Management Act [hereinafter Act]. Appellant, however, has excavated sand and gravel in the floodplain of the Rillito River in Pima County since 1948. He has never applied for or obtained a permit to excavate. The question we must decide, therefore, is whether a use existing prior to August 8, 1973, is subject to permit requirements under the Act even if that use is not hazardous.

The Act requires written authorization from the floodplain board for "sand and gravel operations which will divert, retard or obstruct the flow of waters in any watercourse." A.R.S. § 45–2343(B)(3).[2] It autho-

---

1. A.R.S. § 45–2344 provides: "Every *new* . . . excavation . . . located or maintained within any floodplain in violation of floodplain regulations established by the floodplain board and without written authorization from such board is a public nuisance per se and may be abated, prevented or restrained by action of the state or any political subdivision thereof."

(emphasis added) Because the parties assume that this provision applies to existing uses if the user fails to obtain a required permit, we do not reach the issue of whether A.R.S. § 45–2344 is by its terms inapplicable to existing uses.

2. Because the parties assume that this provision applies to existing uses unless A.R.S.

rizes Pima County, acting as a floodplain board, to adopt "[r]egulations for all subdivision of land, construction of dwelling units or commercial or industrial structures or uses which may divert, retard or obstruct flood water and threaten public health, safety or the general welfare." A.R.S. § 45–2342(C)(1). Pursuant to the Act, Pima County adopted its Floodplain Ordinance, Pima County, Ariz., Ordinance No. 1974–86 (December 16, 1974) [hereinafter Ordinance], which requires sand and gravel excavators within the floodplain to obtain a floodplain permit. Ordinance No. 1974–86, § 1002(5)(B).[3] The Act and the Ordinance each provide that it shall not "[a]ffect existing uses of property or the right to the continuation of the use." A.R.S. § 45–2342(H)(1); Ordinance No. 1974–86, § 501(1).

As a general rule, unless required by law, a permit is not necessary to continue an existing use. 101 C.J.S. Zoning § 219 (1958). The issue in this case, therefore, turns on the meaning of the exemption for existing uses for the Act and the Ordinance arguably require a permit to continue an existing use only if the exemption is inapplicable.

The scope of the exemption depends on the meaning of "affect." In its ordinary sense, both regulation and elimination of an existing use affect that use. Because the floodplain board may impose conditions on the issuance of a permit and thereby regulate the use, the permit requirements of the statute and ordinance potentially affect appellant's use. Appellee disputes that in this context "affect" has its ordinary meaning, contending that only elimination of an existing use affects that use. We disagree.

Briefly stated, appellee's argument is that because the state and county constitutionally could regulate existing uses by imposing permit requirements, e. g., *Goldblatt v. Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); Annot., 10 A.L.R.3d 1226, 1291 (1966), "affect" means unconstitutionally affect, i. e., immediately eliminate or unreasonably regulate existing uses. The issue here, however, is not whether the statute and ordinance constitutionally could regulate existing uses by imposing permit requirements, but whether they have imposed permit requirements on existing uses. Appellee's argument proves only that its interpretation would be constitutional, not that it is correct.

The purpose of exemptions for existing uses is to avoid the injustice and doubtful constitutionality of immediately eliminating existing uses. *Phoenix City Council v. Canyon Ford, Inc.*, 12 Ariz.App. 595, 473 P.2d 797 (1970). As between alternative interpretations, if one is consistent with the legislative purpose and one is not, we will choose the consistent interpretation. *Department of Revenue v. Southern Union Gas Co.*, 119 Ariz. 512, 582 P.2d 158 (1978). In this case, however, the choice is not between an interpretation that is consistent with this purpose and one that is not, but between an interpretation that limits the protection for existing uses to the constitutional minimum and one that affords greater protection. The argument based on purpose does not justify selecting either of these alternatives.

To support its interpretation, appellee relies on the majority rule that no fixed extent, quantity or quality of use is necessary to establish a use. E. g., *Kubby v. Hammond*, 68 Ariz. 17, 198 P.2d 134 (1948); 1 R. Anderson, American Law of Zoning, § 6.19 (2nd ed. 1976). It does not follow, as appellee contends, that once a user establishes an existing use, his rights are limited to continuing his mode of use. To the contrary, subject to reasonable police power regulation, the user has the additional right to maintain the scope and manner of use established prior to the land use regulation.

---

§ 45–2342(H)(1) exempts such uses, we do not reach the issue of whether A.R.S. § 45–2343(B)(3) is by its terms inapplicable to existing uses.

**3.** The Ordinance also requires sand and gravel operators to obtain a special use permit, Ordinance No. 1974–86, § 1001(2)(D), but appellee does not rely on this provision.

See generally, 101 C.J.S. supra §§ 191, 193. The rule for establishing an existing use, therefore, does not support the argument that only elimination of an established existing use affects that use.

Absent persuasive reasons to the contrary, we interpret statutes consistently with the ordinary meaning of the words used. *Castregon v. Huerta*, 119 Ariz. 343, 580 P.2d 1197 (1978). Furthermore, as a general rule, because land use regulations are in derogation of common law property rights, they are strictly construed to favor the property owner. *Kubby v. Hammond*, supra. Although many jurisdictions except from this general rule regulations governing existing uses and construe them to restrict existing uses, 101 C.J.S. supra § 182, Arizona has not adopted this rule. *Phoenix City Council v. Canyon Ford, Inc.*, supra. But cf., *Mueller v. City of Phoenix*, 102 Ariz. 575, 585, 435 P.2d 472, 482 (1967) (Struckmeyer, J., dissenting) (statutes permitting non-conforming uses are to be strictly construed against the non-conforming user). Because we must construe the exemption to favor appellant and because appellee's arguments fail to persuade us that in this context "affect" has other than its ordinary meaning, we conclude that regulation as well as elimination of an existing use affects that use.

The permits required by the Act and Ordinance have an informational as well as a regulatory function. The permit creates a public record of the existing use and the location, scope and manner of that use. Ordinance No. 1974–86, § 1002(5)(B) authorizes the floodplain board to require excavators to include in their permit application an engineering study of the effects of the use on stream mechanics. Requiring a user to provide this information as a condition of continuing his use, however, also affects his use because failure to comply with the information requirements for obtaining permit results in termination of the use.

Because both the regulatory and informational functions of a permit affect appellant's use, summary judgment for appellee was improper. Appellant, however, is not entitled to a dismissal of Counts I and II.

A.R.S. § 45–2345 provides: "It is unlawful for any person to divert, retard or obstruct the flow of waters in any watercourse whenever it creates a hazard to life or property without securing the written authorization required by § 45–2343 [i. e., the permit required by the Ordinance]." (emphasis added)  The section by its terms applies to any person doing the proscribed acts, including an existing user.

When the same statute contains a general provision (the exemption for existing uses), that includes the subject matter of a conflicting particular one (the proscription of specified hazardous conduct by, among others, existing users), the particular provision will be construed as an exception to the general one. *Sakrison v. Pierce*, 66 Ariz. 162, 185 P.2d 528 (1947). If the evidence at trial shows that appellant is diverting, retarding or obstructing waters in the watercourse and that this conduct creates a hazard to life or property, appellant would be required to obtain a permit to continue his use.

Reversed and remanded for further proceedings.

RICHMOND, C. J., and HOWARD, J., concur.