819 P.2d 44

OUTDOOR SYSTEMS, INC., an Arizona corporation; Milton Lee, Trustee for the Danny O. Lee Trust, Plaintiffs/Appellees/Appellants,

v.

CITY OF MESA, an Arizona municipal corporation, Defendant/Appellant/Appellee.

WHITECO METROCOM, INC., an Indiana corporation, Plaintiff/Appellant,

v.

CITY OF TUCSON, an Arizona municipal corporation, Defendant/Appellee.

No. CV–90–0198–CQ.

Supreme Court of Arizona, En Banc.

Oct. 15, 1991.

Beus, Gilbert & Morrill by Martin A. Aronson, Mark C. Dangerfield, Phoenix, for Outdoor Systems, Inc. and Milton Lee.

Shelley, Turley, Swan & Bethea by J. LaMar Shelley, Mesa, for City of Mesa.

Lewis and Roca by John N. Iurino, Susan M. Freeman, Gary Dukarich, Tucson, for Whiteco Metrocom, Inc.

Bradford C. Detrick, City of Tucson Deputy Atty., and Gabroy, Rollman & Bosse, P.C. by John Gabroy, Lyle D. Aldridge, Tucson, for City of Tucson.

## OPINION

CORCORAN, Justice.

The United States Court of Appeals for the Ninth Circuit, 902 F.2d 1579, 902 F.2d 1580, has certified to this court the following questions of law:

1. Does the City of Mesa sign code, in prohibiting all off-site billboards, exceed the authority delegated to the city by A.R.S. § 9-462.01(A)(2)?

2. Do the City of Mesa and City of Tucson sign codes, in requiring the removal of preexisting nonconforming billboards before a landowner may develop or change the use of the property on which the sign is located, impermissibly remove nonconforming uses without purchase or condemnation, in violation of A.R.S. § 9-462.02?

These questions raise difficult and important issues of state law for which there is no controlling authority, and their determination might obviate the need for the Ninth Circuit Court of Appeals to reach constitutional questions. Therefore, we accept jurisdiction pursuant to Ariz. Const. art. 6, § 5(6); A.R.S. § 12-1861; and rule 27(a), Rules of the Arizona Supreme Court.

For the reasons stated below, we answer both questions in the negative.

## FACTS AND PROCEDURAL HISTORY

The questions certified to us originate in three separate appeals to the Ninth Circuit Court of Appeals challenging the validity of municipal ordinances regulating billboards. We will consider the facts relating to each appeal separately.

### 1. *Outdoor Systems, Inc.*

Outdoor Systems, Inc. (Outdoor) is an Arizona corporation that leases advertising space on its billboards located throughout the Phoenix metropolitan area, including the City of Mesa. Milton Lee is the trustee for the Danny O. Lee Trust (Trust and Outdoor are collectively referred to as Outdoor). The Trust owns certain property in Mesa and leases a portion of that property to Outdoor for use as a billboard site.

Mesa amended its sign code in 1986 to prohibit *all* "off site" [1] signs or billboards. Mesa City Code § 4-4-4(B)(1)(e) (as amended 1986) ("Signs which are prohibited under this Code except as nonconforming uses, include: ... (e) Off site signs (billboards), as defined in Section 4-4-5"). By the terms of § 4-4-10(A)(1), any sign that is otherwise lawful, but does not conform to the city requirements at the time of the adoption of the ordinance or any amendment or extension thereto, "shall be deemed a nonconforming sign...." A nonconforming sign "shall not be altered, reerected, relocated or replaced unless it is brought in compliance with the requirements of the Code." § 4-4-10(C)(2). Upon

---

1. Section 4-4-5 of the Mesa City Code defines an "off site" billboard as any sign "which directs attention to a business, commodity, a service, entertainment or product not related to other uses existing on the premises upon which the sign is located."

adoption of the 1986 amendments, Outdoor's billboard became a legal nonconforming use. For an in-depth discussion on the law governing nonconforming uses, *see Rotter v. Coconino County*, 169 Ariz. 269, 818 P.2d 704 (Sup.Ct.1991).

After the enactment of the 1986 amendments to the Mesa code, the Trust applied to Mesa for a permit to construct a sports complex (including batting cages, trampolines, a video arcade, etc.) on the Trust property. Mesa refused to issue the permit unless Outdoor removed its nonconforming sign from the Trust property. Section 4–4–4(B)(2) of the amended code provides that "[a]ny construction permit which invokes Certificate of Occupancy requirements shall specify and require that any Prohibited Sign located within the boundaries of the development site authorized by said permit shall be removed." Mesa also refused to pay compensation for the destruction of Outdoor's billboard.

Outdoor filed suit in federal district court in Arizona challenging Mesa's refusal to issue permits for the proposed sports complex.[2] On cross-motions for summary judgment, the district court held that Mesa could not constitutionally require the removal of Outdoor's nonconforming billboard as a condition for granting the construction permit for the sports complex. The district court, however, rejected Outdoor's first amendment arguments and its claim that the Mesa sign code exceeds the zoning authority conveyed by the enabling act, A.R.S. § 9–462.01(A)(2). The court did not rule on Outdoor's claim that the code permitted the termination of a preexisting nonconforming use without compensation, in violation of § 9–462.02.

Mesa appealed the district court's ruling on the "takings" claim, while Outdoor cross-appealed the district court's other findings. After briefing and oral argument, the Ninth Circuit Court of Appeals certified the two questions before us today.

The Court of Appeals did not certify the constitutional issues raised in either appeal.

### 2. *Whiteco Metrocom, Inc.*

Whiteco Metrocom, Inc. is a lessor of advertising space on billboards located in the City of Tucson. Like Outdoor, Whiteco leases small areas of land from property owners, erects billboards on the leased parcels, and then leases the billboard space to customers.

In 1985, Tucson enacted a sign code regulating the permissible size, location, and height of signs. The code also classified signs as either "on-site" or "off-site." An "off-site" sign is one that relates "to a business, activity, use, or service conducted off the site or to a product not sold on the site." Tucson City Code § 3–39(3) (as amended 1985) (defining billboards). *See also* Tucson City Code § 3–6(15) (an "on-site" sign is one that advertises or identifies a use or activity which occurs on the same premises as the sign). The code permits "off-site" signs only within certain zoning classifications. Tucson City Code § 3–39(3)(6) (listing prohibited locations). The code also requires nonconforming billboards existing before the code enactment in 1985 to be removed in a variety of circumstances, including the development of any previously undeveloped billboard site. Specifically, § 3–39(3)(6)(b), the so-called "vacant lot" provision, provides that "[b]illboards are prohibited on any developed property. Any existing billboard must be removed before a Certificate of Occupancy will be issued for a development on a previously undeveloped parcel...."

Claiming that Tucson's "vacant lot" provision forced it to remove more than 20 billboards, Whiteco filed suit in federal district court seeking to avoid additional billboard removals. Both Whiteco and Tucson filed motions for summary judgment. The district court held that the Tucson ordinance violated Whiteco's first amendment rights, but rejected Whiteco's claim that

---

**2.** Pending final disposition of this case, and in order to moot the necessity of a preliminary injunction hearing in the district court, Mesa agreed to issue the necessary permits for the sports complex without requiring the removal of Outdoor's billboard. Thus, the sports complex already has been built and is operating.

the ordinance exceeds the authority granted by A.R.S. § 9–462.02. Following an amendment to the Tucson ordinance granting additional protection for noncommercial speech, Tucson filed a second motion for summary judgment. The district court modified its earlier decision and granted judgment for Tucson on all claims.

Whiteco appealed, and the Ninth Circuit Court of Appeals certified to this court Whiteco's question concerning § 9–462.02. The Court of Appeals joined Whiteco's claim with the same statutory question certified from the appeal filed by Outdoor.

## DISCUSSION

1. *A.R.S. § 9–462.01(A)(2)*

■ Mesa does not dispute that Outdoor's billboard constitutes a legal nonconforming use. The parties also agree that a municipality's zoning authority derives from the state zoning enabling act, commonly referred to as the Urban Environment Management Act (UEMA), A.R.S. §§ 9–461 and –462. *Circle K Corp. v. City of Mesa,* 166 Ariz. 464, 467, 803 P.2d 457, 460 (App.1990), *citing City of Scottsdale v. Superior Court,* 103 Ariz. 204, 207, 439 P.2d 290, 293 (1968). The first question we must answer is whether Mesa's sign code, which prohibits all off-site billboards, exceeds the city's authority granted by the UEMA. Section 9–462.01(A) of that act provides: .

> [T]he legislative body of any municipality by ordinance may in order to protect and promote the public health, safety and general welfare:
>
> . . . .
>
> 2. Regulate signs and billboards.
> 3. Regulate location, height, bulk, number of stories and size of buildings and structures, the size and use of lots, yards, courts and other open spaces, the percentage of a lot which may be occupied by a building or structure, access to incident solar energy and the intensity of land use.

■ We begin by noting that once the UEMA grants zoning authority to a city, such power "must be exercised within the limits and in the manner prescribed in the grant and not otherwise." *City of Scottsdale v. Scottsdale Associated Merchants, Inc.,* 120 Ariz. 4, 5, 583 P.2d 891, 892 (1978) (hereinafter *Associated Merchants* ). For this reason, and also because zoning enactments exist in derogation of property rights, courts must strictly construe zoning ordinances. *Id.* We have also recognized, however, that zoning enactments constitute legislative action. As such, they are generally "cloaked with a presumption of validity." *City of Tempe v. Rasor,* 24 Ariz.App. 118, 119, 536 P.2d 239, 240 (1975). *See also Transamerica Title Ins. Co. v. City of Tucson,* 23 Ariz.App. 385, 387, 533 P.2d 693, 695 (1975).

Here, Outdoor argues that Mesa's power to "regulate" billboards under the UEMA does not encompass the power to "prohibit" off-site billboards, just as the power given a state agency to regulate a professional or business activity does not include the power to prohibit that regulated activity altogether. For case support, Outdoor cites only *Combined Communications Corp. v. City and County of Denver,* 189 Colo. 462, 466, 542 P.2d 79, 82 (1975), in which the court concluded that the city charter's authorization of regulation did not allow Denver to prohibit off-premises billboards.

In response, Mesa stresses the impossibility of regulating the placement of billboards without prohibiting signs located in violation of the city ordinance. The ordinance provides, for example, that any billboard must be placed on the same premises as the business or service which it advertises. *See* Mesa City Code §§ 4-4-5, 4-4-4(B)(1)(e). To say Mesa lacks the power to prohibit a billboard that is unrelated to the use or activity occurring on the same premises essentially nullifies the city's on-site requirement. Mesa also submits that the majority of cases have upheld the banning of off-site billboards regardless of the language of the enabling statute, and in doing so have rejected the distinction between the power to regulate and the power to prohibit. *See, e.g., Kovacs v. Cooper,* 336 U.S. 77, 85, 69 S.Ct. 448, 452, 93 L.Ed. 513

(1949); *Metromedia, Inc. v. City of San Diego*, 26 Cal.3d 848, 863, 164 Cal.Rptr. 510, 518, 610 P.2d 407, 415 (1980), *rev'd on other grounds*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *Beckish v. Planning & Zoning Comm'n*, 162 Conn. 11, 15, 291 A.2d 208, 211 (1971); *Lamar-Orlando Outdoor Advertising v. City of Ormond Beach*, 415 So.2d 1312, 1315 (Fla. App.1982); *John Donnelly & Sons, Inc. v. Outdoor Advertising Bd.*, 369 Mass. 206, 214, 339 N.E.2d 709, 715 (1975). *See also* Annotation, *Validity and Construction of State or Local Regulation Prohibiting Off-Premises Advertising Structures*, 81 A.L.R.3d 486, 516 (1977).[3]

■ We believe that Mesa's ordinance prohibiting off-premises signage is a valid exercise of the city's power to regulate signs and billboards. Although failing to use the term "prohibit" alongside the word "regulate," § 9–462.01(A) vests Mesa with "broad authority" to regulate land uses. *See Circle K*, 166 Ariz. at 467, 803 P.2d at 460. This authority includes the power to regulate the location and specifications of signs and billboards. Mesa's ordinance does not breach that power by restricting the location of a detached sign to the site of the activity or enterprise which it advertises. Nor does it eliminate the existence of the very thing or act to be regulated. Mesa's sign code does not prohibit all signs and billboards, but only those classified as off-site.

*Bartolomeo v. Town of Paradise Valley*, 129 Ariz. 409, 631 P.2d 564 (App.1981), supports this interpretation. There, the court of appeals held that UEMA § 9–462.-01(A)(1), which permits cities to "[r]egulate the use of buildings, structures and land as between agriculture, residence, industry, business and other purposes," granted the Town of Paradise Valley the power to prohibit all uses other than large residential lots. *Bartolomeo*, 129 Ariz. at 412–13, 631 P.2d at 567–68. If the power to regulate under § 9–462.01(A)(1) includes the power to prohibit all uses but one, then the power to regulate under § 9–462.01(A)(2) must embrace the power to prohibit all types of detached signs other than on-site billboards.[4]

We also agree with Mesa that *Combined Communications* represents the minority view. The notion that an ordinance banning off-site billboards may be invalidated as prohibitory "conflicts with reality and with current views of the police power." *Metromedia*, 26 Cal.3d at 863, 164 Cal. Rptr. at 518, 610 P.2d at 415. Whatever difference exists between the power to regulate and the power to prohibit, in the context of this case, "is one of words and not substance." *Id.* In briefs and at argument, Outdoor characterized the ordinance as a blanket ban of off-site billboards, while Mesa described it as a regulation limiting billboard advertising to on-site signs. We do not believe that the validity of Mesa's ordinance depends upon a party's choice of phraseology. Mesa's power to stringently regulate billboards, which Outdoor does not deny, is broad enough to permit the city to regulate off-site billboards prohibitively.

Contrary to the fear voiced by Outdoor, our decision does not sanction the wholesale prohibition of any activity that a municipality or government agency may regulate pursuant to an enabling act. We hold only that, by virtue of the broad zoning power conferred by the *UEMA*, Mesa is authorized to prohibit *off-premises signs*. It does not follow that a city or regulatory board may use the same or another grant of enabling power to obtain extreme results, such as a ban of on-premises identifi-

---

**3.** Outdoor attempts to distinguish Mesa's cases by arguing that they do not construe specific enabling acts, but police power generally. We disagree. As the *Lamar–Orlando* court explained, most courts have refused to recognize the regulation-prohibition distinction "with regard to the scope of the police power *or legislative discretion given cities to pass zoning ordinances.*" 415 So.2d at 1315 (emphasis added).

**4.** The City of Phoenix, coincidentally, presently interprets the UEMA as conveying the power to "regulate, license or *prohibit* the construction and use of billboards and signs." Phoenix City Charter, Ch. 4 § 2(17) (emphasis added).

cation signs or the prohibition of all new entrants into a business or profession.

■ Ultimately, the validity of any regulation authorized by an enabling act depends not so much on its regulatory or prohibitory nature, but on whether it is reasonable. *Board of Technical Registration v. McDaniel,* 84 Ariz. 223, 228–29, 326 P.2d 348, 352 (1958) (state may confer authority on a board to enforce reasonable standards in the architecture and engineering professions); *City of Tucson v. Arizona Mortuary,* 34 Ariz. 495, 501, 272 P. 923, 925 (1928) (municipality may pass any reasonable ordinance to ensure the sanitariness and inoffensiveness of undertaking establishments); *Aiton v. BOMEX,* 13 Ariz. 354, 359, 114 P. 962, 963 (1911) (board of health cannot act capriciously or without cause in regulating the medical profession); 5 E. McQuillin, *Law Of Municipal Corporations* § 18.02, at 422 (3d rev. ed. 1989) ("An ordinance will be sustained, ... where its terms and provisions are expressly and specifically authorized by charter or statutory authority, where ... the power to enact it has been substantially followed and exercised in a reasonable manner."); 1 C. Antieau, *Municipal Corporation Law* § 5.18, at 5–66 (1991) (regulating ordinances must be reasonable). The court in *Combined Communications* admitted as much by stating that "whether one proceeds under a 'police power' argument or under a 'regulatory' argument, one proceeds down the same path—that of reasonableness." 189 Colo. at 465, 542 P.2d at 82.

In the context of a zoning case, an ordinance is reasonable if it has "any substantial relationship to public health, safety, morals or general welfare." *Bartolomeo,* 129 Ariz. at 414, 631 P.2d at 569, *citing Cardon Oil Co. v. City of Phoenix,* 122 Ariz. 102, 104, 593 P.2d 656, 658 (1979). Here, Mesa's sign code is certainly valid and reasonable as applied to off-premises signs, especially given the stated objective of the code, which is to

> (a) reduce advertising distractions, which may contribute to traffic accidents; (b) assure that public benefits derived from expenditures of public funds for the im-

provement and beautification of streets and other public structures and spaces shall be protected by exercising reasonable controls over the character and design of private structures; and (c) to provide an improved visual environment for the citizens of and visitors to the City of Mesa, Arizona.

Mesa City Code § 4–4–2 (purpose and intent of code). Section 9–462.02 also expressly indicates "that the eventual termination of nonconforming uses serves a public purpose." *Rotter,* 169 Ariz. at 276, 818 P.2d at 711.

We do not doubt that off-site billboards pose a significant threat to public safety and the general welfare. The sole purpose of such a structure is to occupy land and air space as conspicuously as possible to "divert a driver's attention from the roadway." *Metromedia,* 26 Cal.3d at 859, 164 Cal.Rptr. at 515, 610 P.2d at 412. As a result, the United States Supreme Court held that off-site billboards create traffic hazards and detract from the appearance of the community. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 508–10, 101 S.Ct. 2882, 2893–94, 69 L.Ed.2d 800 (1981). Therefore, under well-established law, cities may prohibit "billboards entirely in the interest of traffic safety and aesthetics, and may also prohibit them except where they relate to activity on the premises on which they are located." *National Advertising Co. v. City of Orange,* 861 F.2d 246, 248 (9th Cir.1988), *citing Metromedia,* 453 U.S. at 507–12, 101 S.Ct. at 2892–95.

Based upon the foregoing, we find that Mesa does not exceed its zoning power conveyed under UEMA § 9–462.01(A)(2) by prohibiting off-site billboards.

### 2. *A.R.S. § 9–462.02*

Whiteco does not contend that the Tucson code exceeds the city's authority under the UEMA. However, Whiteco joins with Outdoor in arguing that the Tucson and Mesa sign codes violate § 9–462.02 of the UEMA, which provides:

> The municipality may acquire by purchase or condemnation private property

for the removal of nonconforming uses and structures. The elimination of such nonconforming uses and structures in a zoned district is for a public purpose. Nothing in an ordinance or regulation authorized by this article shall affect existing property or the right to its continued use for the purpose used at the time the ordinance or regulation takes effect, nor to any reasonable repairs or alterations in buildings or property used for such existing purpose.

Whiteco and Outdoor marshal two main arguments to their cause. First, the city ordinances seek to eliminate off-site billboards without "purchase or condemnation," which is arguably the only prescribed method of acquiring a nonconforming use under UEMA § 9–462.02. Second, development of the vacant lot surrounding an off-site billboard does not alter the nature of the nonconforming use existing at the time the cities' ordinances were enacted. Such development, therefore, cannot remove the protection otherwise afforded the off-site billboard under the nonconforming use statute.

At the outset, we wish to mention our recent discussion in *Rotter v. Coconino County*, 169 Ariz. 269, 818 P.2d 704 (Sup. Ct.1991), regarding the present judicial attitude toward nonconforming uses. As our research there indicated, "the general rule that zoning ordinances should be strictly construed in favor of the property owner has been widely disregarded with respect to nonconforming uses." *Id.*, at 276, 818 P.2d at 711, *citing Albert v. Board of Standards*, 89 A.D.2d 960, 961–62, 454 N.Y.S.2d 108, 110 (App.Div.1982); 1 R. Anderson, *American Law of Zoning 3d* § 6.07, at 465 (1986). We debated whether we should follow the same approach in *Rotter*, especially in light of the court of appeals' opinion stating that "Arizona has never embraced the rule of construing provisions permitting nonconforming uses strictly against the nonconforming user." *Rotter v. Coconino County*, 167 Ariz. 198, 204, 805 P.2d 1019, 1025 (App.1990), *quoting Pima County v. Cardi*, 123 Ariz. 424, 427, 600 P.2d 37, 40 (App.1979), *citing Phoenix City Council v. Canyon Ford,*

*Inc.*, 12 Ariz.App. 595, 598, 473 P.2d 797, 800 (1970).

■ *Rotter* resolved the debate by disapproving the quoted statement in *Cardi* and by recognizing that

[p]ublic policy favors the eventual elimination of nonconforming uses. This is implicit in § 9–462.02 and throughout the entire statutory scheme empowering Arizona cities and towns to employ zoning regulations for land use planning.

*Rotter*, 169 Ariz. at 273, 818 P.2d at 708, *quoting Gannett Outdoor Co. v. City of Mesa*, 159 Ariz. 459, 461, 768 P.2d 191, 193 (App.1989). Consistent with *Rotter*, regulations governing nonconforming uses are *excepted* from the general rule that zoning ordinances should be strictly construed in favor of the property owner. Bearing this in mind, we return to the two arguments advanced by Whiteco and Outdoor.

### a. *Methods of Terminating Nonconforming Uses*

■ As to their first argument, we are not convinced UEMA § 9–462.02 establishes the exclusive method for eliminating a nonconforming use. The first sentence of § 9–462.02 provides that the "municipality *may* acquire" nonconforming uses by "purchase or condemnation." (Emphasis added.) The legislature's use of the word "may" implies that the statute is permissive in nature, and that it does not expressly limit a municipality to the "purchase or condemnation" option. *Accord Circle K*, 166 Ariz. at 469, 803 P.2d at 462 (court of appeals found no evidence "that the legislature intended the permissive 'may' used in the first sentence of A.R.S. § 9–462.02 to be interpreted as 'shall' "); *cf. Bartolomeo*, 129 Ariz. at 412, 631 P.2d at 567 (the use of "may" in A.R.S. § 9–462.01(A)(1) denotes permissiveness).

■ Indeed, the final sentence of § 9–462.02 clearly contemplates an owner's loss of the right to continue a nonconforming use without the benefit of "purchase or condemnation." The sentence warns that the statute protects a nonconforming use only if the nature of the use has remained

the same since "the time the ordinance or regulation takes effect." This tracks the general rule that the owner of a nonconforming use does not have a vested right to expand or change the nature of that existing use. *See* 4A N. Williams, *American Land Planning Law* § 113.08, at 168 (1986); 1 R. Anderson, *supra*, § 6.45, at 581–82. Whiteco and Outdoor cannot deny that, with the exception of "reasonable repairs or alterations," *see* § 9–462.02, the right to continue a nonconforming use ceases once it is put to a different use, regardless of whether the municipality offers compensation.

We are aware that in *Associated Merchants* this court invalidated an ordinance requiring the removal of nonconforming signs after a specified amortization period because it conflicted with the "purchase or compensation" language contained in § 9–462.02. 120 Ariz. at 5, 583 P.2d at 892. In deciding to certify the present questions to this court, however, the Ninth Circuit Court of Appeals concluded that *Associated Merchants* is distinguishable from this case. Certification to the Supreme Court of the State of Arizona from the United States Court of Appeals for the Ninth Circuit, p. 8 (hereinafter Certification). We agree that the ordinances presently before us fall quite short of the "end-run" around the UEMA attempted in *Associated Merchants*.

Unlike the City of Scottsdale in *Associated Merchants*, Mesa and Tucson did not take positive action aimed at eliminating nonconforming billboards. The cities simply enacted ordinances providing for the removal of a nonconforming use once the use is changed, as contemplated in the last sentence of § 9–462.02. Had the sign companies or the Trust not developed the parcels surrounding the billboards, the status of the signs with respect to the nonconforming use statute would not be disputed. As the Ninth Circuit Court of Appeals correctly noted, termination of the nonconforming use in *Associated Merchants* was accomplished strictly through municipal mandate, whereas termination under the Mesa and Tucson ordinances is self-inflicted, triggered at least in part by the owner's

or lessor's voluntary action in seeking a certificate of occupancy for new development. Certification, p. 8. The very need for a certificate of occupancy is, of course, a signal of a pending change in use. This difference renders *Associated Merchants* inapplicable to our decision.

According to Whiteco and Outdoor, any ordinance requiring a landowner to select between the maintenance of an off-site billboard and future development of the billboard site provides only a "Hobson's choice" and amounts to the type of extortion denounced in *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 841, 107 S.Ct. 3141, 3151, 97 L.Ed.2d 677 (1987) (unless the California Coastal Commission paid compensation to a property owner, it could not require the owner to give the public an easement across his beachfront property before it allowed him to rebuild a house on the property). We do not agree. The choice faced by Whiteco and Outdoor is no different from the choice faced by any other owner of a nonconforming use, which is to maintain the nonconforming use as is or relinquish that right in favor of another, perhaps more profitable use. *Nollan*, furthermore, is easily distinguishable because it did not involve a nonconforming use. As previously mentioned, a landowner does not enjoy the same privileges with regard to a nonconforming use as he would with a conforming property right. The elimination of nonconforming uses, moreover, clearly effectuates a "legitimate state interest" as mandated in *Nollan*, 483 U.S. at 841, 107 S.Ct. at 3151.

We believe § 9–462.01 makes it plain that a municipality's taking of a billboard for aesthetic reasons is a permissive public purpose that will support a condemnation action. It does not require condemnation. We do not believe that the legislature intended to create an exclusive method for removing nonconforming uses. Acquisition by "purchase or condemnation" is simply one method of eliminating such uses. The statute does not preclude Mesa and Tucson from pursuing another option, including an ordinance conditioning the issuance of new construction permits upon

the removal of all nonconforming billboards located on the parcel for which the permits are sought.

### b. *"Existing Property" Defined*

 This leads us, of course, to the complex question of whether development of the land surrounding an off-site billboard changes the nature of the nonconforming use protected under § 9–462.02. The answer depends, we believe, on what is meant by the phrase "existing property" in § 9–462.02. If "existing property" refers only to the off-site *billboard*, as Whiteco and Outdoor insist, then changes made to the land surrounding the sign do not affect the nature of the existing nonconforming use. In that instance, the cities may not strip the nonconforming billboard of the protection afforded under § 9–462.02. On the other hand, if "existing property" means the *land* on which the billboard sits, then development of any portion of that parcel alters the nature of the existing use, thereby eliminating the owner's right to maintain the off-site billboard.

The arguments presented by both sides suggest that defining "existing property" is not as simple as the legislature's failure to explain the term implies. *See* 1 R. Anderson, *supra*, § 6.08, at 466 (question of what constitutes an existing use is committed to the courts with a minimum of legislative help). Both constructions have merit and find at least some support in the cases. We also find nothing in the plain language of § 9–462.02 precluding either interpretation. Our decision, therefore, boils down to one of policy. In view of the purpose of zoning regulations and the strong public policy against nonconforming uses in general, we believe Whiteco and Outdoor interpret "existing property" far too narrowly.

Zoning is fundamentally the control of *land* use, of which the regulation of buildings, signs, or other structures attached to the land is only a part. *See, e.g.,* 1 R. Anderson, *supra*, § 1.13, at 21 ("Compre-

hensive zoning consists of the division of the whole territory of a municipality into districts, and the imposition of restrictions upon the *use of land* in such districts.") (Emphasis added.) It should come as no surprise, therefore, that a city such as Mesa or Tucson would seek to regulate a nonconforming billboard as it relates to the whole of the parcel on which it sits, and not simply as an independent structure. Indeed, such reasoning formed the basis of the court of appeals' recent decision in *Circle K,* 166 Ariz. at 468, 803 P.2d at 461. At issue in *Circle K* was whether § 4–4–12(D)(6) of the Mesa City Code, which requires the elimination of a nonconforming sign as a condition for city approval of plans to erect a separate conforming sign on the same property, conflicts with A.R.S. § 9–462.02. 166 Ariz. at 468, 803 P.2d at 461.

Circle K relied on the same line of argument advanced in this case by Whiteco and Outdoor. Namely, because the nonconforming use was the detached sign alone, the addition of a conforming sign to another part of the premises does not change the nonconforming use. *Id.* The court of appeals did not agree. Because § 9–462.02 does not expressly prohibit Mesa's attempt "to regulate signage as part of a 'specific occupancy,' rather than as individual signs," the court concluded that "a municipality may consider a particular parcel as an integrated whole such that additions to one part of the parcel may be considered additions to all other parts of the parcel." [5] *Id.*

The reasoning in *Circle K* applies with equal force here. Like § 4–4–12(D)(6) of the Mesa City Code, the ordinances challenged in this case do not seek to regulate signage as individual structures, but as part of the entire development site upon which the signs are located. Under this approach, "existing property" consists of the *entirety* of the nonconforming parcel, meaning the billboard *plus* the surrounding

---

5. The *Circle K* court also found that § 4–4–12(D)(6) does not occasion the evil results normally indicating a need for protection under the nonconforming use statute, including "the injus-

tice of forcing retroactive compliance and the doubtful constitutionality of compelling immediate discontinuance of a nonconforming use." 166 Ariz. at 469, 803 P.2d at 462.

property. The ownership and leasehold interests in the parcel are protected by the nonconforming use statute so long as the "existing property" is put "to its continued use for the purpose used at the time the ordinance or regulation takes effect." However, once the owners or leaseholders put the "existing property" to a different use by developing any portion of the site, Mesa and Tucson can require the removal of all nonconforming billboards. We find this construction entirely compatible with § 9–462.02.[6] *See also Arizona Found. for Neurology v. Sienerth*, 13 Ariz.App. 472, 477, 477 P.2d 758, 763 (1970) (§ 9–462.02 "was enacted to protect the rights of property owners *whose property remains unchanged* after a zoning ordinance") (emphasis added).

In large part, our decision is grounded in the disfavored treatment accorded nonconforming uses under the law. As one leading commentator states:

> Public policy and the spirit of zoning measures, of which the courts take cognizance, are to restrict and not to increase nonconforming uses. This is necessarily implied by a zoning plan comprehensive in character. Consistently, zoning policy is against the indefinite extension of nonconforming uses. The public effort is not to extend a nonconforming use but rather to permit it to exist as long as necessary and then to require conformity in the future. Indeed, the public intent is the eventual elimination of nonconforming uses.

8A E. McQuillin, *supra*, § 25.183, at 22 (footnotes omitted); *see also Gannett Outdoor*, 159 Ariz. at 461, 768 P.2d at 193 (public policy behind § 9–462.02 favors the eventual elimination of nonconforming uses). We are compelled, therefore, to strictly construe § 9–462.02 against the interests of Whiteco and Outdoor, and in favor of Mesa and Tucson. Any other approach may risk granting billboard owners

and lessors a perpetual right to threaten public safety and inflict an aesthetic blight on the community, regardless of how the rest of the billboard site is improved or modified. Such a result would contravene the sensible policy underlying § 9–462.02, which is to reduce nonconforming uses "to conformity as soon as is consistent with fairness and due process of law." *Rotter*, 169 Ariz. at 278, 818 P.2d at 713. The ordinances at issue here further the appropriate goal of shortening the lives of nonconforming uses without violating statutory constraints.

## CONCLUSION

Accordingly, we hold that the Mesa and Tucson sign codes do not violate A.R.S. § 9–462.02 by requiring the removal of preexisting nonconforming billboards before a landowner may develop the property on which the sign is located. We also hold, in answer to the first question certified to us, that Mesa does not exceed the regulatory authority delegated to it by A.R.S. § 9–462.01(A)(2) by prohibiting all off-site billboards.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER, J., concur.

CAMERON, Justice, dissenting:

I regret that I must dissent. I do so for three reasons. First, I do not believe that the government may require the removal of a legal (albeit preexisting and non-conforming) billboard as a condition for a zoning change or issuance of a building permit. To require the landowner to give up what he is legally permitted to have in order to obtain what he may already be entitled to, is bureaucratic extortion, if not judicial extortion.

Second, I object to the sweeping statement "[t]hat billboards pose a significant threat to public safety and the general welfare cannot be doubted." On the con-

---

**6.** Whiteco and Outdoor contend that the cities' own practices in purchasing or condemning billboards confirms that the existing property is the billboard and not the billboard site. If the city condemns a nonconforming billboard, for example, it obviously acquires the billboard and not the surrounding land. We are not persuaded by this argument. All it suggests is that a municipality is under no obligation to condemn more than is necessary to bring the *entire parcel* into conformity with the zoning ordinances.

trary, I have my doubts. Admittedly, much depends on the time and place. An unusually animated billboard may be distracting to a driver, but no more than children, members of the opposite sex or cattle in a pasture. I find nothing in the evidence below to support the statement that billboards pose a significant threat to safety or the general welfare.

Finally, I believe "existing property" as used in the UEMA refers to the billboard itself as opposed to the land surrounding it, as the majority maintains. Therefore, because appellants have not changed the use of the existing property, they are still entitled to protection under UEMA § 9–462.02