586 P.2d 199

NEW PUEBLO CONSTRUCTORS, INC., an Arizona Corporation, Mary Carrasco, as Administratrix of the Estate of Joseph Carrasco, Deceased, and Mary Carrasco, a widowed woman, Appellants,

v.

PIMA COUNTY, Pima County Board of Supervisors, Appellees.

No. 2 CA–CIV 2768.

Court of Appeals of Arizona, Division 2.

June 21, 1978.

Rehearing Denied Sept. 5, 1978.

Review Denied Oct. 3, 1978.

Stubbs & Townsdin, P. C. by Robert C. Stubbs, Tucson, for appellants.

Stephen D. Neely, Pima County Atty. by Albin Krietz and Howard Baldwin, Deputy County Attys., Tucson, for appellees.

## OPINION

RICHMOND, Chief Judge.

This is an appeal from a judgment of the superior court upholding the refusal by the Pima County Board of Supervisors to rezone approximately 65.5 acres from general rural classification (GR) to an industrial zone (CI–2). Appellant New Pueblo Constructors, Inc., acquired part of the land in question under GR zoning and has agreed to purchase the remainder from appellant Carrasco, subject to obtaining the requested rezoning.

It is well established that the matter of zoning is appropriately one for the legislative branch of government, and that if the validity of the legislative classification for zoning purposes be fairly debatable the legislative judgment must be allowed to control. *City of Phoenix v. Oglesby,* 112 Ariz. 64, 537 P.2d 934 (1975).

The land in question is embodied in the Santa Cruz Valley Area Plan, a general land use plan adopted by the board of supervisors, and lies approximately one mile north of Green Valley, a residential community composed primarily of retired persons.

It is not reasonably adapted to residential development because of its location within the 100-year flood plain of the Santa Cruz River, and its adaptability to agricultural use is questionable because of its configuration and the declining water table in the area. The property contains deposits of aggregate suitable for use in New Pueblo's construction operations, and under the existing GR zoning New Pueblo could have commenced removal of the aggregate had it applied for a permit for such use of the land. The permit, however, would have been for a term not to exceed 12 months, with renewal dependent on the circumstances existing at the end of its term.

In denying appellants' prayer for CI–2 zoning, and for damages, the trial court by minute entry made the following statements, *inter alia:*

"In a case such as this, there is a very great temptation for the Court to set itself up as a super zoning authority.

"The general purpose of zoning laws is to promote the general welfare by providing a more stable environment for the orderly development of a community, i. e., a means of strengthening the character of a particular area in terms of its use. *Rubi v. 49'er Country Club Estates,* 7 Ariz.App. 408, 440 P.2d 44.

"The request of the plaintiff in this case for CI–2 zoning is clearly a request for spot zoning. There are no other areas within the general geographical area of this site that are zoned to this high degree. It is true that north, up near Sahuarita, there is an industrial zone. This area is included in the Santa Cruz Valley area plan.

"The residents of Green Valley, the area immediately south of the proposed rezoning, have made known their protest against this zoning to the Board of Supervisors and some residents testified in the instant action.

"Plaintiffs complain in this action that the Pima County Board of Supervisors in exercising their power to deny the rezoning request has caused expense or loss to the individual property owners involved.

This claim of loss of value of property, use of property, does not overcome the presumption of validity of the actions of the Board. It is not the duty of this Court to substitute the Court's judgment for the judgment of the legislative body of the Pima County Board of Supervisors. Unless the Court can find that the action of the Pima County Board of Supervisors is arbitrary and capricious and without reason, it has no discretion to exercise its judicial power.

"There was much testimony taken in this case in regard to the possible development of this property for residential purpose. It is the considered opinion of the Court in this case that by preponderance of the evidence, it would appear that the instant property cannot be used economically for residential purposes in excess of what it is probably being used for. Insofar as this particular property being susceptible to economic development by the parties for agriculture purposes of farming, it is the considered opinion of the Court that the preponderance of the evidence shows that this property cannot be used for agricultural purposes. But with the finding by the Court that it cannot be economically used for residential and agricultural purposes per se, has the Court the authority to say that the Board of Supervisors acted in an arbitrary and unreasonable manner in denying zoning to CI–2?

"The Court is mindful of this fact that this whole area has been developed into an area where retired people are urged to come. It has been developed as a new city in the last ten, eleven or twelve years with the investments of millions of dollars in that area. The plaintiff, New Pueblo Contractors, has worked in that area, and apparently has prospered by building this said community. But now, the plaintiff says regardless of the feeling of the people of Green Valley, we want to put CI–2 zoning north of the town. The Board of Supervisors, in looking at the overall development plan, has come to the conclusion that CI–2 zoning is not the proper zoning at this time for

this particular parcel. This Court is of the opinion that where there is a general land use plan as we have in this instance, that the legislative body, representing the people of the area, has the right to determine whether or not the plan should be deviated from in a case of this type. To change this zoning from GR to CI–2 is a very dramatic change in the use of this land. There is no evidence that there are any other sites of CI–2 zoning in this general area of Green Valley. The Court is of the opinion that the legislative body, the Board of Supervisors, has it within their power and it is their duty to determine whether or not the land use plan shall be so dramatically departed from as in the instant case.

\*   \*   \*   \*   \*   \*

"This Court feels the area of Green Valley is confronted with a dramatic change in zoning so as to put an industrial park of in excess of 50 acres within a mile north of it. This does not call for a simple undebatable solution. This is an issue that is clearly debatable and the Court will not substitute its judgment for the judgment of the Board of Supervisors . . . ."

■ Appellants argue that zoning decisions are not to be made upon the objections of other property owners. Apparently they contend the decision was based solely on such objections. The record does not support this contention. Testimony of the Green Valley residents as to the character of the area was material and properly considered. *Rubi v. 49'er Country Club Estates, Inc.*, 7 Ariz.App. 408, 440 P.2d 44 (1968).

■ Appellants next argue the zoning ordinance is invalid because it precludes any reasonable use of the property. New Pueblo's president testified it would not be economically feasible to construct a batch plant for processing the aggregate unless such use were permitted on a permanent basis, rather than as a special use for a limited term. There was evidence, however, that the company had performed similar operations at other locations with facilities that were less than permanent. To establish that the statute is confiscatory in effect, it must be shown that the zoning restrictions *prevent* the use of the property for a purpose to which it reasonably might be adapted, not that the property might be used more profitably under another classification. *Rubi v. 49'er Country Club Estates, Inc.*, supra.

■ The trial court correctly found the validity of the decision by the board of supervisors to be fairly debatable and, therefore, correctly declined to substitute its judgment for that of the board.

■ Our holding disposes of appellants' contention that they are entitled to damages because the zoning ordinance effectively deprives them of all reasonable use of their property. In any event, a valid exercise of the police power is not the equivalent of a taking under the power of eminent domain. *See Moton v. City of Phoenix*, 100 Ariz. 23, 410 P.2d 93 (1966).

Affirmed.

WREN and HATHAWAY, JJ., concur.