631 P.2d 564

John BARTOLOMEO and Osmond Burton, Jr., Plaintiffs-Appellants,

v.

The TOWN OF PARADISE VALLEY, an Arizona municipal corporation, Barbara Von Ammon, Wyman Hitchcock, Barry Palmer, Oscar C. Palmer, Sr., Peter Wainwright, Jeffrey Timbanard, John Brock, Jon Bonnell, Mel Kowal, William Simon, William Fulton, John Keenan, J. D. Sanders, and Henry Guthrie, Defendants-Appellees.

No. 1 CA-CIV 4470.

Court of Appeals of Arizona,
Division 1,
Department B.

May 26, 1981.

Rehearing Denied June 17, 1981.

Review Denied July 7, 1981.

John G. Gliege, Scottsdale, for plaintiffs-appellants.

Romley & Sherk by Kenneth J. Sherk, Phoenix, and John R. Cunningham, Phoenix, for defendants-appellees.

## OPINION

EUBANK, Judge.

The main issues raised in this appeal are whether the zoning ordinances of the appellee, Town of Paradise Valley (Town or Town Council), are unconstitutional.

Appellants were denied a special use permit to build a tennis resort by the Town Council. They filed a declaratory judgment action (A.R.S. § 12–1831 et seq.) against the Town in the superior court asking that the ordinances be declared unconstitutional. Following discovery, the Town moved for summary judgment and the trial court granted the Town's motion. The effect of the judgment is to uphold the constitutionality of the Town's zoning ordinances. Appellants appeal from the summary judgment.

At oral argument before this Court, the parties admitted that there are no disputed issues of fact. Thus, the issues raised for our determination involve questions of law. The main facts were stipulated to by the parties in their joint pretrial statement filed with the trial court, as follows:

1. [The Town of] Paradise Valley is a municipal corporation, and the individual defendants [appellees] are residents who are members of the Town Council or Planning and Zoning Commission or were such at the time the events complained of occurred.

2. On October 16, 1961, the Town Council adopted Ordinance No. 10, viz: "Zoning Ordinance of the Town of Paradise Valley, Arizona," and on March 4, 1974, the Town Council adopted Ordinance No. 88 called "The Zoning Ordinance of the Town of Paradise Valley."

3. All nonresidential uses in the Town of Paradise Valley are nonconforming uses or special uses.

4. Plaintiffs' [appellants'] property is vacant and situated on the west side of Scottsdale Road (the boundary between Paradise Valley and Scottsdale) with frontage of approximately 1,279 feet and a depth of approximately 1,216 feet, consisting of 40 acres, more or less, and zoned R–43, single-family residential. A portion of the property is within the Indian Bend Wash, [approximately 15 acres] as shown on plate 1 (Town Exhibit 50).

5. Bordering plaintiffs' property on the north, west and east are Camelback Country Club, single-family residences of

one acre or more and Scottsdale Road (a heavily travelled 4-lane highway), respectively. Bordering plaintiffs' property on the south is an undeveloped subdivision under single ownership.

6. On October 16, 1973, plaintiffs filed an application for a special use permit, pursuant to the zoning ordinance, to develop a resort hotel and tennis facilities.

7. The application was assigned to a Special Use Permit Subcommittee.

8. Subsequent to the filing of the application for a special use permit, plaintiffs met with the Subcommittee on four separate occasions, during which demands were made for plans, drawings, studies, exhibits and other documentation.

9. The Planning and Zoning Commission required of the plaintiffs the following:

A model of the proposed development; hydrological study; proposal for development of the flood plain; line of sight drawings; evidence of approval of plaintiffs' proposed improvement of floodplain from the United States Army Corps of Engineers and the Maricopa County Flood Control District; economic evidence of the need for this type of resort and tennis facility; building materials samples; comparisons of existing structures for purposes of demonstrating such structures larger than plaintiffs' proposed structure; demographic information showing source of expected membership and users; amount of electrical energy required by air-conditioners to service the buildings; detailed landscaping plans for the proposed project; plans for development of that portion of plaintiffs' property which would be reserved and upon which no construction would occur that would obstruct the flow of floodwater during heavy rainfall; outdoor lighting plans; plans of the water system and lines; location of fire hydrants; disposition of surface water; engineering study for air-conditioning system; market feasibility; aesthetics to fit plan of the Town; and approval of the number of fire hydrant locations from the Rural Fire Department.

Plaintiffs did not provide a model, fire hydrant locations or approval from the Rural Fire Department.

10. The Subcommittee recommended denial of plaintiffs' application for a special use permit to the Planning and Zoning Commission, which then held three public hearings (September 16, October 21 and November 4, 1975—when plaintiffs presented their application and some neighboring residents presented their opposition) and recommended denial to the Town Council, which held a public hearing and denied the application on December 4, 1975.

At the December 4th hearing before the Town Council, appellants' application was denied on the following basis:

Move to deny the application for the Special Use Permit which is before the Council at this time for the Paradise Valley Racquet Club for the following three reasons: first, that the proposed use would not serve the public health, safety or welfare of the Town of Paradise Valley; second, that the applicants have failed to submit in such form as has been prescribed by the Planning and Zoning Commission sufficient and adequate detailed preliminary plans for the uses proposed by the applicants; and for the third grounds that the applicants have failed to file a valid application for a redefinition of the Indian Bend Wash Encroachment Line or to provide sufficient documentation and evidence in support of such a redefinition, and therefore the proposal would violate Section 1024 of the Town Zoning Ordinance since land subject to the proposed Special Use Permit does lie within the encroachment lines, specifically approximately 60% of the land that would be subject to the Special Use Permit does lie within the present encroachment lines, and the Council has found that the applicant has not met its burden as provided in subsection 5 of Section 1024 and has failed to show that there is no substantial hazard created by the proposed improvements.

Appellants first contend that the zoning ordinances of the Town classifying all land in the Town in residential large-lot (R–43) zone is unconstitutional. No direct authority in support of their contention is cited. Instead, they rely on A.R.S. § 9–462.01.A.1, and *Exton Quarries v. The Zoning Board of Adjustment of West Whiteland Township*, 425 Pa. 43, 228 A.2d 169 (1967). Appellants also contend that they have met their burden of proof demonstrating that the Town's zoning ordinance is unconstitutional. We disagree.

First, we disagree because A.R.S. § 9–462.01.A.1 is a permissive statute. It provides that the legislative body of the Town *may* enact ordinances, "Regulating the use of buildings, structures and land as between agriculture, residence, industries, business and other purposes." The statute does not require, or even suggest, that any or all of these zones must be enacted by the town. *Compare* A.R.S. § 9–463.01. Reading the statute as a whole, it is clear that the legislature intended to leave these legislative questions for the Town to decide under its police powers. *City of Phoenix v. Oglesby*, 112 Ariz. 64, 65, 537 P.2d 934, 935 (1975). M. R. Schroeder, *Public Regulation of Private Land Use in Arizona: An Analysis of its Scope and Potential*, Part 1, Ariz. St.L.J. (Vol. 1973 No. 4).

Second, we disagree because *Exton Quarries* does not directly support appellants' contention. The court there held, that since Pennsylvania was a strict construction state where zoning is concerned, the remote-small (pop. 100) town of West Whiteland could not ban quarrying. We do not find the case persuasive. Cases on both sides of the issue, however, are collected in *Annot.* 54 A.L.R.3d 1282, *Validity of Ordinance Zoning Entire Municipality for Residential Use*. Cases cited upholding such limited residential zoning classification are *Cadoux v. Planning and Zoning Commission of Town of Weston*, 162 Conn. 425, 294 A.2d 582, 54 A.L.R.3d 1278 (1972), *cert. denied*, 408 U.S. 924, 92 S.Ct. 2496, 33 L.Ed.2d 335 (1972); *McDermott v. Calverton Park*, 454 S.W.2d 577 (1970,Mo.); *Gautier v. Jupiter Island*,

142 So.2d 321 (1962,Fla.App.); *Blank v. Lake Clarke Shores*, 161 So.2d 683 (1964,-Fla.App.); *Richlawn v. McMakin*, 313 Ky. 265, 230 S.W.2d 902 (1960); *cert. dismissed*, 340 U.S. 945, 71 S.Ct. 531, 95 L.Ed. 682 (1951); *Connor v. Chanhassen*, 249 Minn. 205, 81 N.W.2d 789 (1957); *Old Westbury v. Foster*, 193 Misc. 47, 83 N.Y.S.2d 148 (1948); *Gignoux v. Kings Point*, 199 Misc. 485, 99 N.Y.S.2d 280 (1950); *Nehrbas v. Lloyd Harbor*, 147 N.Y.S.2d 738 (1955), *modified on other grounds*, 1 App.Div.2d 1034, 152 N.Y. S.2d 28 (1956), *aff'd on other grounds*, 2 N.Y.S.2d 190, 159 N.Y.S.2d 145, 140 N.E.2d 241 (1957); *Gardner v. LeBoeuf*, 24 Misc.2d 511, 204 N.Y.S.2d 468 (1960), *aff'd*, 15 App. Div.2d 815, 226 N.Y.S.2d 678 (1962); *Valley View Village, Inc. v. Proffett*, 221 F.2d 412 (6th Cir. 1955) (applying Ohio law); *Los Altos Hills v. Adobe Creek Properties, Inc.*, 32 Cal.App.3d 488, 108 Cal.Rptr. 271 (1973). Cases cited opposed to such classification are *Gundersen v. Bingham Farms*, 372 Mich. 352, 126 N.W.2d 715 (1964); *Dowsey v. Kensington*, 257 N.Y. 221, 177 N.E. 427, 86 A.L.R. 642 (1931); *Hobart v. Collier*, 3 Wis.2d 182, 87 N.W.2d 868 (1958). The rationale of the cited cases upholding limited classification can be summarized in one word: reasonableness, i. e., the legislative determination of a limited zoning classification was found to be reasonable.

A good example of this rationale is found in the *Cadoux* case. There the town of Weston, Connecticut, zoned itself primarily as single-family residential lots. The applicant desired to have the zoning ordinance amended to permit the use of real property to expand his nonconforming shopping center. The application was denied, and the denial was affirmed on appeal. The court, quoting in part from *Valley View Village v. Proffett*, *supra*, said:

"Traditional concepts of zoning envision a municipality as a self-contained community with its own residential, business and industrial areas. It is obvious that Valley View, Ohio, on the periphery of a large metropolitan center, is not such a self-contained community, but only an adventitious fragment of the economic

and social whole. We cannot conclude as a matter of law that an ordinance which places all of the area of such a village into a residential district is per se arbitrary and unreasonable, with no substantial relation to the public health, safety, morals or general welfare. It would appear contrary to the very purposes of municipal planning to require a village such as Valley View to designate some of its area for business or industrial purposes, without regard to the public need for business or industrial uses. The council of such a village should not be required to shut its eyes to the pattern of community life beyond the borders of the village itself. We think that it is not clearly arbitrary and unreasonable for a residential village to pass an ordinance preserving its residential character, so long as the business and industrial needs of its inhabitants are supplied by other accessible areas in the community at large." *Valley View Village, Inc. v. Proffett*, 221 F.2d 412, 418 (6th Cir.); see *Connor v. Township of Chanhassen*, 249 Minn. 205, 81 N.W.2d 789; *Old Westbury v. Foster*, 193 Misc. 47, 48, 83 N.Y.S.2d 148. The reasonableness of a zoning ordinance must be judged by the circumstances of each particular case. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303; note, 54 A.L.R. 1030.

The town of Weston is on the periphery of other larger metropolitan centers. The Weston shopping center, although its use is nonconforming under the present zoning regulations, contains the post office, a service station, a food market, a dry cleaner, a package store, a hardware store, a hobby store, a real estate office, a drygoods store, a bank, a drugstore and a luncheonette. On these facts we cannot say that the defendant commission was unreasonable or that it failed to consider the needs of the community. We note also that among the reasons given by the defendant for the denial of the plaintiff's application was the finding that the "increased traffic would present a hazard in view of the width and curvature of the road and in its location opposite the entrance to schools and school bus garage." The trial court's ruling was correct.

162 Conn. at 428–29, 294 A.2d at 583, 54 A.L.R.3d at 1280–81. This case is factually similar to the case *sub judice*, and we agree with its reasoning. The Town was established as a "bedroom community" existing on the periphery of the large business areas of Scottsdale and Phoenix and has little need for business development.

The cited cases opposed to limited classification are based upon a variety of legal questions: in *Gundersen*, the enabling statute did not authorize a limitation; in *Dowsey*, the ordinance was found to be unreasonable; and in *Hobart*, the preamble of the zoning ordinance exceeded the limited zoning classification provided in the body of the ordinance and was therefore held to be invalid. These cases either do not address our situation, or we consider the holdings questionable at best.

Third, although there is no Arizona case directly on point, the Arizona authorities support the majority rationale that "reasonableness of the ordinance" is the test. This test will be more fully discussed hereafter.

Fourth, we disagree because the U.S. Supreme Court has held that such limited zoning is not unconstitutional *per se*. In *Village of Belle Terre v. Bruce Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) the court said in upholding limited zoning classification to one-family dwellings:

A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one within *Berman v. Parker*, supra. The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.

416 U.S. at 9, 94 S.Ct. at 1541, 39 L.Ed.2d at 804. *See also Annot. Supreme Court's View as to Constitutionality of Residential Zoning Restrictions*, 52 L.Ed.2d 863 (1978).

■ Finally, regarding appellants' burden of proof allegation, the principal constitutional test applied to zoning decisions is whether a zoning ordinance bears any substantial relationship to public health, safety, morals or general welfare. *Cardon Oil Co. v. City of Phoenix*, 122 Ariz. 102, 593 P.2d 656 (1979). It is our opinion that appellants have neither demonstrated the unconstitutionality of the ordinance nor have they carried their burden of proof. In *City of Tempe v. Rasor*, 24 Ariz.App. 118, 536 P.2d 239 (1975) we stated the rules governing our review of a zoning ordinance as follows:

We start with the proposition that zoning enactments being legislative functions, are cloaked with a presumption of validity. *Mueller v. City of Phoenix*, 102 Ariz. 575, 435 P.2d 472 (1967); *Hart v. Bayless Investment & Trading Co.*, 86 Ariz. 379, 346 P.2d 1101 (1959); *City of Phoenix v. Collins*, 22 Ariz.App. 145, 524 P.2d 1318 (1974); *City of Phoenix v. Beall*, 22 Ariz.App. 141, 524 P.2d 1314 (1974); *City of Phoenix v. Price*, 18 Ariz. App. 144, 500 P.2d 1132 (1972). To overcome this presumption it must be shown that the classification is clearly arbitrary and unreasonable and without any substantial relation to the public health, safety, morals or general welfare. *City of Tucson v. Arizona Mortuary*, 34 Ariz. 495, 272 P. 923 (1928); *Collins, supra.*

The limited function of the judiciary in zoning matters is reflected by the following quote from *Rubi v. 49'er Country Club Estates, Inc.*, 7 Ariz.App. 408, 411–412, 440 P.2d 44, 47–48 (1968):

"With the wisdom or lack of wisdom of the determination we are not concerned. The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life. Let us state the proposition as clearly as may be: It is not our function to approve the ordinance before us as to wisdom or desirability. For alleged abuses involving such factors the remedy is the ballot box, not the courts. * * *" *Robinson v. City of Bloomfield Hills*, 350 Mich. 425, 86 N.W.2d 166, 169 (1957).

That the trial court or this court may disagree as to the advisability of an ordinance or the refusal to amend it, is of no moment, even if we were to indulge in the elusion that an imperfect zoning regulation may be corrected by judicial scrutiny on appeal. It is immaterial whether we would have been wiser if we had been called upon to perform this legislative function. As stated in *Rubi, supra,* "Courts are ill equipped to sit as superzoning commissions. Therefore, where the reasonableness of a zoning ordinance is fairly debatable, it must be upheld." 7 Ariz.App. at 411, 440 P.2d at 47.

A definition of the "fairly debatable" standard is set forth in 8A McQuillin, Municipal Corporations, § 25–281 at 291–292 (3rd ed. 1965). In pertinent part it states:

"[I]f reasonable minds differ as to whether a zoning restriction has a substantial relation to one of these fundamental purposes of the police power and of zoning, the restriction must stand as a valid exercise of the police power."

* * * Accordingly, *the function of this court is to determine whether the record shows a reasonable basis for the action of the zoning authorities, and if the reasonableness of the ordinance is fairly debatable, the legislative determination will not be disturbed.* (Emphasis added).

24 Ariz.App. at 119–20, 536 P.2d at 241.

■ The record here shows a reasonable basis for the action of the town council in denying the special use permit: concern for floodplain development, lack of sufficient preliminary plans, and the lack of a model of the proposed project. This is enough.

■ Next, appellants contend that the zoning classification for their land of R–43 (one house per acre) is unconstitutional because the zoning has no substantial relation to the health, safety and welfare of the Town. The basis for their contention arises, in part, from the analysis by our Court in *City of Tempe v. Rasor, supra.* Thus, they point out that their land is va-

cant and situated on Scottsdale Road, a four-lane heavily traveled road carrying in excess of twenty thousand cars per day and which contains similar development as contemplated by them on Scottsdale Road within the Scottsdale city limits. No claim is made that the land cannot be used under the R–43 zoning, but only that the R–43 zoning precludes the land's development to its highest use as a tennis resort. A review of the record shows a reasonable concern by the Council for the development of any improvements within the Indian Bend Wash Encroachment Line. Thus, in our opinion, the question of rezoning within the Encroachment Line is "fairly debatable" and purely a legislative decision for the Town Council. Further, for the same reason, we conclude that the Council's denial of the appellants' application for a special use permit was not arbitrary or unreasonable. *Wait v. City of Scottsdale,* 127 Ariz. 107, 618 P.2d 601 (1980).

Appellants claim they suffered economic loss due to the denial of the special use permit. They note that the land value on the date the application was denied was $461,000, and they maintain that had the permit been granted the land would be worth $1,200,000. As noted above, the existence of R–43 zoning was known to the appellants when they purchased the property and nothing prevents them from developing the land under that zoning. Claimed economic loss alone does not justify rezoning. *City of Phoenix v. Fehlner,* 90 Ariz. 13, 363 P.2d 607 (1961); *New Pueblo Construction, Inc. v. Pima County,* 120 Ariz. 354, 586 P.2d 199 (App. 1978). In our opinion, the denial of the special use permit is justified on the record. *Wait v. City of Scottsdale, supra; City of Phoenix v. Oglesby, supra.*

Next, appellants contend that the special use permit procedures, art. XI, Section 1102, of the Zoning Ordinance, employed by the Town is unconstitutional because: (1) it unlawfully delegates to the commission the power to determine the information an applicant should provide, and (2) it fails to set forth standards to govern the administrative decision-making process.

Appellants primarily base their objection on A.R.S. § 9–463. This section, however, applies only to subdivisions and not to appellants' situation. Rather, A.R.S. §§ 9–462 —9–462.07 are applicable. Section 9–462.01 provides the Town Council with discretionary authority to enact zoning ordinances covering a multitude of possibilities. It does not require the Town to enact at least one of them as Section 9–463 requires.

In addition, we have read the entire zoning ordinance (No. 10 and No. 88) which includes Section 1102. When the ordinances are read as a whole, there are adequate standards to guide the planning agency in their duties. One example is Section 1024 dealing with floodplain management. It is clear from the record of the December 4th Town Council meeting, where appellants' application was rejected, that one of the major reasons for the rejection was appellants' failure to comply with this section and the Council's reluctance to approve, even contingently, a special use permit which did not fully comply with Section 1024. Finally, our reading of the record does not convey the feeling of prejudice that appellants seek to convey here. The requests for information made by the subcommittee and planning agency, including the request for a model, do not appear unreasonable in light of the nature and extent of the proposed development. How else could the Council be apprised of the facts?

Next, appellants claim that the issuance of special use permits is an administrative function. In *Town of Paradise Valley v. Gulf Leisure Corp.,* 27 Ariz.App. 600, 605, 557 P.2d 532, 537 (1976), we said:

At the outset, it must be noted for purposes of our discussion that no distinction is drawn between "special use permit", "variance", "rezoning", "amendment", or "building permit" with regard to Paradise Valley. All these terms, while technically different in various circumstances, 101 C. J. S. *Zoning* §§ 268–275, have no real significance, at least as to their generally accepted usage, to the

**416**

manner Paradise Valley zones its community. Paradise Valley zones its entire area R–43 (residential with one-acre lots) and allows variations to this singular zoning through the utilization of "special use permits", "amendments" or "variances". In effect, Paradise Valley through these devices re-zones its area to accommodate new uses. We will treat all these terms synonymously. [See 101 C.J.S. *Zoning* §§ 274–275].

Thus, the granting or the refusal to grant rezoning by special use permit is a legislative function of the Town Council subject to limited review by this Court. *Wait v. City of Scottsdale, supra; New Pueblo Contractors, Inc. v. Pima County, supra.* Therefore, there is no substance to this claim by appellants. *See* Case Note, *Property-Reliance on Authorized Permit Establishes Right to Land Development, Town of Paradise Valley v. Gulf Leisure Corp., Ariz. St. L. J.* (Vol. 1978 No. 1, p. 137).

Appellants further argue that since the issuance of a special use permit is an administrative function "standards must be clearly spelled out to govern the exercise of administrative decision making power." Since we have rejected the appellants' major premise above, we merely note that the legislative body, the Town Council, rejected appellants' application. Obviously, there was no delegation and no need for standards. Their decision was "fairly debatable" and therefore we affirm it. *Dye v. City of Phoenix*, 25 Ariz.App. 193, 542 P.2d 31 (1975).

Finally, appellants contend that the Town Council abused its discretion in denying them the special use permit. For the reasons set forth above, we reject this contention.

In their reply brief, appellants allege that the appellees have not answered the issues raised in their opening brief. We disagree. All of the substantive issues raised were fully addressed by the appellees. Nothing more is required.

The summary judgment in favor of the Town is affirmed.

HAIRE, P. J., and WREN, C. J., concur.