881 P.2d 366

**STATE of Arizona, Plaintiff–Appellee,**

v.

**John E. OAKLEY, Defendant–Appellant.**

**No. 1 CA–CV 92–0420.**

Court of Appeals of Arizona,
Division 1, Department D.

Aug. 30, 1994.

Reconsideration Denied Sept. 30, 1994.

Quarles & Brady by Charles W. Herf and Andrew S. Hendricks, Phoenix, for appellant.

Charles R. Hastings, Yavapai County Atty. by M. Randolph Schurr, Deputy County Atty., Prescott, for appellee.

## OPINION

KLEINSCHMIDT, Judge.

This appeal concerns whether a member of the Board of Governors of the Yavapai County Community College District vacated his office by moving out of the district from which he was elected. We affirm the trial court's ruling that the board member did vacate his office.

John E. Oakley was first elected to the Board of Governors of the Yavapai Community College District in 1974. He was re-elected three times, most recently in 1990 for a term to expire at the end of 1996. The community college district is comprised of five smaller election districts, each of which contains a number of election precincts. One board member is elected from each of these smaller election districts, and must be a resident of that district. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") §§ 15–1441(A) and 38–291(5). Oakley served as the board member from District One. While the statutes sometimes refer to these five smaller districts as "precincts," we will continue to describe them as "election districts" to distinguish them from regular election precincts.

At its meeting on August 13, 1991, the community college board drew new boundaries for the five election districts. The boundaries were drawn so that the current board members would still reside in the districts from which they had been elected. On October 7, 1991, the Yavapai County Board of Supervisors approved the revisions of the election districts previously drawn by the community college board.

At the time the new election districts were drawn and approved, Oakley lived at 405 Delano Avenue in Prescott, which was in District One, both as that district originally existed and as it was redrawn. On November 5, 1991, Oakley moved to a house on Cyclorama Drive in Prescott which was in

the new, but not in the old, District One.[1] In the Spring of 1992, the Yavapai County Superintendent of Schools wrote Oakley saying that the new boundaries were not in effect when Oakley moved so that he had ceased to reside in the district from which he had been elected and, pursuant to A.R.S. section 38–291(5),[2] could not continue to serve as a member of the board. The superintendent declared Oakley's seat vacant. Ignoring the superintendent's actions, Oakley continued to serve as a board member and voted at the April board meeting.

Shortly thereafter, the State filed an action to require Oakley to vacate his office. It posed four alternative dates for when the new election districts took effect.[3] Each such date was after the date of Oakley's move to the Cyclorama Road residence. If the State is correct as to any alternative effective date, Oakley moved out of the district from which he was elected and vacated his office pursuant to A.R.S. section 38–291(5) and article 7, section 15 of the Arizona Constitution. Oakley answered the suit with the contention that the new election districts took effect on October 7, 1991, the date on which the board of supervisors approved the new boundaries, so that even if he did move to his new home on November 5, he was always a resident of District One.

█ Following a trial, the judge found that Oakley moved out of the district from which he had been elected. The judge, apparently basing his decision on the terms of A.R.S. section 16–412, concluded that the new district boundaries became effective on March 1, 1992, and entered an order excluding Oakley from a position on the board. Arizona Revised Statutes section 16–412 provides that "[f]or the purpose of conducting any election called pursuant to the laws of this state, [election districts] shall not become effective until March 1 of the year of the next general election." Since the statute refers narrowly to the effective date "for purposes of conducting any election," it is arguable that the trial judge applied the statute too broadly in extending it to establish the effective date for determining whether a board member resided within the district from which he was elected. The case need not turn on this issue because we believe that even if the trial judge was wrong on this point, the State is certainly on firm ground in asserting that the effective date was November 15, 1991, which was thirty days after the board of supervisors approved the minutes of the meeting at which they had approved the new boundaries. We will affirm the trial court when it reaches the correct result even though it does so for the wrong reasons. *Gary Outdoor Advertising Co. v. Sun Lodge, Inc.*, 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982).

### THE NEW ELECTION DISTRICTS TOOK EFFECT ON NOVEMBER 15, 1991

We turn to an explanation of why we believe the boundaries took effect on November 15. The gist of our conclusion is that no enactment can take effect until after the time for filing a referendum petition has expired.

1. Oakley insinuates that the trial judge abused his discretion in finding that November 5 was the date Oakley moved to Cyclorama Road. He did not make this an issue in his opening brief. In his reply brief, he argues that he did not really change his address until December of 1991. Oakley raises the issue too late. *See Camelback Contractors, Inc. v. Industrial Comm'n,* 125 Ariz. 205, 208, 608 P.2d 782, 785 (App.1980). In any event, the evidence clearly supports the judge's finding. By his own account, Oakley's wife and mother-in-law moved into the new residence on November 5. Oakley's affidavit on the subject is silent as to where he usually spent the night after November 5, but he states that he only "occasionally" spent the night at the Delano Avenue residence since November 5, 1991.

2. A.R.S. § 38–291(5) states that "[a]n office shall be deemed vacant from and after the occurrence of any of the following events before the expiration of a term of office if the office is elective, the person holding the office ceasing to be a resident of the state, or, if the office is local, or from a legislative or congressional district, the person holding the office ceasing to be a resident of the district, county, city, town or precinct for which he was elected, or within which the duties of his office are required to be discharged."

3. It is unnecessary to discuss all the alternative dates the State suggested as the effective date of the new election districts. We need only discuss the date the trial judge relied on and the date we conclude was the one on which the new districts surely took effect.

Arizona Revised Statutes section 19–142(B) provides:

**Referendum petitions against municipal actions; emergency measures**

**B.** A city or town ordinance, resolution or franchise *shall not become operative until thirty days after its passage* by the council and approval by the mayor, unless it is passed over his veto, and then it shall not become operative until thirty days after final approval and until certification by the clerk of the city or town of the minutes of the meeting at which the action was taken, except emergency measures necessary for the immediate preservation of the peace, health, or safety of the city or town.... (Emphasis added.)

■ While the statute, by its express terms, refers only to cities and towns, we find that it also applies to the enactments of county boards of supervisors. Arizona Revised Statutes section 19–144, which was in effect when the county board of supervisors approved the election districts, provided that referendum petitions against an ordinance, franchise or resolution passed by a county board of supervisors may be filed under the provisions of title 19, article 4, of which A.R.S. section 19–142 is a part. In *Pioneer Trust Co. v. Pima County*, 168 Ariz. 61, 67, 811 P.2d 22, 28 (1991), the Supreme Court of Arizona noted that a referendum petition regarding a county zoning ordinance had to be filed within thirty days after its passage in accordance with A.R.S. section 19–142(A). The court pointed out that the thirty-day referendum period began running when the minutes of the meeting in which the zoning action was adopted were approved if that was the time when a full and correct copy of the board of supervisor's action was available. *Id.* at 68–69, 811 P.2d at 29–30. Thus, we conclude that if the approval of the new district boundaries is an action subject to referendum, the new boundaries did not go into effect until thirty days after October 15, 1991, the day on which the board of supervi-

sors approved the minutes of the October 7 meeting.[4]

■ We must determine whether the approval of new election districts was subject to a referendum. An action by the board of supervisors is subject to referendum only if it is a *legislative*, as opposed to an administrative, action. *Wennerstrom v. City of Mesa*, 169 Ariz. 485, 488, 821 P.2d 146, 149 (1991). An action "that declares a public purpose and provides for the ways and means of its accomplishment is legislative." *Id.* at 489, 821 P.2d at 150, *citing Pioneer Trust*, 168 Ariz. at 65, 811 P.2d at 26. The *Wennerstrom* court acknowledged the difficulty in determining whether an enactment is legislative or administrative, and observed:

[A]n act or resolution constituting a declaration of public purpose and making provision for ways and means of its accomplishment is generally legislative as distinguished from an act or resolution which merely carries out the policy or purpose already declared by the legislative body.

*Id.* at 489, 821 P.2d at 150, *quoting* 5 E. McQuillin, *The Law of Municipal Corporations* § 16.55 at 266 (3d rev. ed. 1989).

In *Menendez v. City of Union City,* 211 N.J.Super. 169, 511 A.2d 676 (A.D.1986), the court explained the distinction as follows:

When a municipal governing body has latitude within its discretion in adopting the specific provisions of an ordinance, its enactment is legislative and subject to referendum, even though its authority to legislate on that subject has been delegated to it by State law. When a municipal governing body is merely complying with and putting into execution a State or local legislative mandate in adopting an ordinance, in effect exercising a ministerial function, its enactment is administrative and not subject to referendum.

*Id.* 511 A.2d at 676.

■ We conclude that the adoption of the boundaries of an election district is a legislative act. The authority to establish

---

4. We assume, on a silent record, that a correct copy of the board's action could not have been available before the minutes of the October 7 meeting were approved. Even if this is not cor-

rect, the effective date of the new election district boundaries would be November 7, a date after Oakley moved from the Delano Street address.

community college election districts is delegated to the board of supervisors by A.R.S. section 15–1441(A). The board has, in the language of *Menendez,* "latitude within its discretion" in selecting the boundaries. Other than the direction contained in A.R.S. section 15–1441(A) that the boundaries must coincide with those of regular election precincts, the board is free to fashion districts as it sees fit without reference to any particular legislative formula. *See Ortiz v. Madera County Bd. of Supervisors,* 107 Cal.App.3d 866, 872, 166 Cal.Rptr. 100 (1980) (change in supervisorial district boundaries is legislative function subject to referendum). Accordingly, the new boundaries went into effect on November 15, 1992, thirty days after the minutes of the October 7, 1991 meeting were approved.

### THE STATUTE CREATING ELECTION DISTRICTS IS CONSTITUTIONAL

Oakley, basing his position on article 7, section 15 of the Arizona Constitution, argues that the statute which creates five election districts within a community college district is unconstitutional. Article 7, section 15 reads:

> **§ 15. Qualifications for public office**
> Section 15. Every person elected or appointed to any elective office of trust or profit under the authority of the State, or any political division or any municipality thereof, shall be a qualified elector of the political division or municipality in which such person shall be elected.

▆▆▆▆ Oakley's first argument is that the entire Yavapai County Community College District, as opposed to the five election districts, is the "political division" to which the constitution refers. This being true, he says, he never moved out of the political district from which he was elected. The State takes the opposite position, arguing that the election districts within the community college district are themselves political divisions of the state so that under the very terms of the constitution itself, Oakley was required to maintain his residence in District One. Our examination of the question discloses little which sheds light on it except for the statute which creates the election districts. In enacting that provision the legislature impliedly construed the constitution to mean that persons must reside in the election districts from which they are elected. We cannot say that construction is either unreasonable or not in accord with the intent of those who adopted the constitution. Presumably the legislature acts constitutionally. When there is a reasonable, albeit debatable, basis for a statute, we will uphold it unless it is clearly unconstitutional. *State v. Arnett,* 119 Ariz. 38, 48, 579 P.2d 542, 552 (1978).

Oakley has another related argument. He says that the legislature never had the right to adopt the election district statute because article 7, section 15 imposes the *only* qualification for the office he held, and the legislature had no authority to impose additional qualifications. We begin our analysis of this argument with an old case from another jurisdiction which is directly on point. In *State ex rel. Hartford v. Craig,* 132 Ind. 54, 31 N.E. 352 (1892), an action *in quo warranto* was brought against a city councilman who had moved out of the ward from which he had been elected. The Indiana Constitution provided that "all county, township, and town officers shall reside within their respective counties, townships and towns." Ind. Const. art. VI, § 6. An Indiana statute provided:

> No person shall hold the office of councilman unless, at the time of his election, he is a resident of the ward from which he is elected, and, in the case of the removal of any councilman from the ward from which he was elected, the common council shall have power to declare his office vacant, and order a special election to fill the vacancy.

Ind.Code § 3043 (1881).

The Supreme Court of Indiana, in resolving the very argument Oakley makes in this case, observed that the legislature had the power to impose additional restrictions and conditions with respect to the office of councilman as long as those restrictions or conditions were not in conflict with any express provision of the constitution. *Id.* 31 N.E. at 352. *See also Boughton v. Price,* 70 Idaho 243, 215 P.2d 286 (1950); *Glasco v. State Election Board,* 121 Okla. 119, 248 P. 642 (1926).

Oakley, however, relies on *Gibbany v. Ford*, 29 N.M. 621, 225 P. 577 (1924), in which the Supreme Court of New Mexico held that a statute which required town councilmen to reside in the wards from which they were elected violated a provision of the New Mexico Constitution which read:

> Every citizen of the United States who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any public office in the state except as otherwise provided in this Constitution.

N.M. Const. art. VII, § 2.

The New Mexico Constitution also provided that municipal officers were required to reside within the political subdivision for which they were elected. N.M. Const. art. V, § 13. The court posed the question it had to decide in the following terms:

> The question presented, then, is whether a ward within a city, town, or village is a political subdivision within the intendment and meaning of the Constitution. If it is not, then residence within the municipality meets the constitutional requirement, and the Legislature has no power to add restrictions upon the right to hold office beyond those provided in the Constitution, because the constitutional provision is not a negative one, providing that no person shall be eligible to hold an office unless he possess certain qualifications, as is often the case in other states, but is a positive provision, giving the right to every person possessing the qualifications therein set forth to hold office, except as otherwise provided in the Constitution itself.

*Id.* 225 P. at 578. The court went on to conclude that wards were not political subdivisions of the state because New Mexico law provided that aldermen were to be elected at large.

There are several reasons why *Gibbany* does not govern the case before us. First, unlike the New Mexico Constitution, there is no provision in the Arizona Constitution which says that all qualified electors may hold public office·except as otherwise specified in the constitution. Second, by New Mexico law, aldermen, unlike community college board members in Arizona, were expressly elected at large.

There is one Arizona case, not cited by either party, which deserves comment. In *Whitney v. Bolin*, 85 Ariz. 44, 330 P.2d 1003 (1958), our supreme court was confronted with the question whether a superior court judge who filed nominating papers for the office of justice of the supreme court had forfeited his office under a statute which provided that no incumbent of an elective office was eligible for nomination to any other public office. The statute also provided that the penalty for violation was forfeiture of the office held. The Arizona Constitution expressly provided that justices of the supreme court must be persons of good moral character and admitted to the practice of law in and a resident of the state for ten years preceding their taking office. Ariz. Const. art. VI, § 6. The court held that the judge had not forfeited his office. It reasoned:

> It is our opinion that the constitutional specifications are exclusive and the legislature has no power to add new or different ones. The qualifications fixed in the Constitution are exclusive for the reason that if it were not intended by the framers thereof to fix all the qualifications, then it must have been intended to fix only a part and leave it to the legislature to fix others. Such a view is inconsistent with accepted constitutional construction that the enumeration of certain specified things in a constitution will usually be construed to exclude all other things not so enumerated. Positive directions in a constitution contain an implication against anything contrary to them. Indeed, were the framers to intend otherwise, they would have created the office with directions that the legislature could or should fix other qualifications.

> It is established that where a state constitution provides for certain officials and names the qualifications, the legislature is without authority to prescribe additional qualifications unless the constitution further, either expressly or by implication, gives the legislature such powers.

*Id.* at 47, 330 P.2d at 1004.

▮ Notwithstanding the statement of the general proposition that the legislature cannot add qualifications for office not speci-

fied in the constitution, we believe that *Whitney* actually supports the conclusion that the statutory requirement that members of the board of the community college district reside in the election districts from which they are elected is constitutional. The constitutional proviso that prescribes that all office holders must reside in the divisions from which they are elected is merely a general rule that cannot be equated with other constitutional provisions which enumerate specific qualifications for various state offices. The constitution is silent about the qualifications for members of the board of governors of a community college district, and thus, by implication, has left the legislature free to enact statutes on that subject. Because that is the case, and because A.R.S. section 15–1441(A) is not inconsistent with article 7, section 15 of the Arizona Constitution, the statute is valid.

The judgment of the trial court is affirmed.

GARBARINO, Acting P.J., and NOYES, J., concur.