STARING, Presiding Judge
¶ 1 Private Motorsports Group, LLC ("PMG"), the Clerk of the City of Maricopa ("the Clerk"), and the Mayor and individual members of the City Council (collectively, "the City") appeal from the trial court's ruling in favor of Maricopa Citizens Protecting Taxpayers and its officers, Robert Rebich, and David Prom (collectively, "Maricopa Citizens") in their action seeking declaratory, injunctive, and special action relief regarding a petition seeking a referendum on the City's decision to grant PMG a permit to operate a motorsports facility. PMG also appeals from the court's denial of its counterclaims against Maricopa Citizens and cross-claims against the Clerk. On September 6, 2017, we reversed the trial court and directed it to enter judgment in favor of PMG, the Clerk, and the City, indicating a written opinion would follow. This is that opinion.
Factual and Procedural Background
¶ 2 The controversy in this case centers on a large parcel of land located in Pinal County. In 1963, it was zoned "CI-2-Industrial Zone." The City annexed the property in 2007, but retained its zoning designation under the then-existing zoning code ("the Old Code"). The City adopted a new zoning code ("the New Code") in 2015. Subsequently, PMG sought a permit to build a motorsports facility on the site and, pursuant to the City's instructions, submitted in February 2017 a "Conditional Use Permit Application" (a designation that existed only in the New Code) upon which someone had handwritten "Industrial Use Permit" (a designation that existed only under the Old Code). The Old Code expressly identified a "[r]acetrack or sports stadium" as a possible use under the property's existing CI-2-Industrial Zone designation. In April 2017, the City's Zoning and Planning Commission unanimously approved PMG's application, as did the City Council.
¶ 3 Maricopa Citizens then filed a referendum application and, in June 2017, submitted eighty-six petition sheets containing approximately 1,000 signatures. The Clerk determined *1106 the subject matter of the referendum was "an administrative act, rather than a legislative act and, therefore, not subject to referendum." The Clerk also disqualified thirty signatures for statutory reasons.
¶ 4 Maricopa Citizens filed a complaint naming PMG,[1] the Clerk, and the City as defendants. Maricopa Citizens first argued the City had violated the New Code by issuing the permit, claiming the property had to first be rezoned and then approved by the Planning and Zoning Commission instead of the City Council. Thus, Maricopa Citizens reasoned, the City's action was "akin to a zoning decision and therefore referable" because a conditional use permit did not exist under the old zoning designation. According to Maricopa Citizens, the City had "made policy" by deciding "a property owner that was in a district under the Old Code in which he was eligible to apply for an industrial use permit [was] now eligible for a conditional use permit" and by determining "the decision whether to grant [a conditional use permit] should be governed by the Old Code." Maricopa Citizens further argued that, under the Old Code, the City's determination to award PMG a permit constituted a legislative decision. Finally, Maricopa Citizens contended the Clerk lacked authority to invalidate twelve of the signatures pursuant to A.R.S. § 19-121.01 because only the city or zip code was missing, and not the residence address.
¶ 5 PMG counterclaimed against Maricopa Citizens and cross-claimed against the City and the Clerk for declaratory, injunctive, and special-action relief, asserting the petition sheets "invert[ed] the placement of the designation of the 'Maricopa City Council' as the body enacting the matter to be referred" and thus did not comply with A.R.S. § 19-101(A). PMG further asserted the sheets violated A.R.S. § 19-121(A)(5)"by having a top margin of less than one-half inch." Thus, PMG concluded, the petition sheets were invalid because they did not strictly comply with applicable statutory requirements for referendum.
¶ 6 After briefing and oral argument, the trial court ruled in favor of Maricopa Citizens, concluding the grant of the use permit was legislative action and thus subject to referendum irrespective whether "the new code preserved the right to apply for an industrial use permit, or if the City Council made a policy decision to restore that right." It further concluded the Clerk's decision to disqualify twelve signatures "exceeds the permitted scope of the initial review" allowed by statute. Finally, the court determined the petitions were not "fatally defective," finding the "petition strictly complies with A.R.S. §§ 19-101(A) and 19-121(A) as reasonably construed to supplement its constitutional purpose." Accordingly, the court ordered the Clerk "to include the twelve signatures in the count of eligible signatures, include those signatures in the pool of eligible signatures for random selection, and promptly forward the legally required random sample of the subject referendum petition to the County Recorder." This appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12-2101(A)(1) and 19-122(A).
Discussion
¶ 7 We address first the question whether the trial court erred by concluding the City's decision to grant the use permit was a legislative rather than administrative act and therefore subject to referendum. We review the court's determination de novo. See Respect the Promise in Opposition to R-14-02 Neighbors for a Better Glendale v. Hanna , 238 Ariz. 296, ¶ 11, 360 P.3d 92 (App. 2015) ("Whether a particular action taken by the governing body of a municipality is subject to the referendum power is a question we review de novo.").
¶ 8 "The Arizona Constitution reserves the power of referendum to ... qualified electors...." Redelsperger v. City of Avondale , 207 Ariz. 430, ¶ 8, 87 P.3d 843 (App. 2004) ; Ariz. Const. art. IV, pt. 1 § 1 (8). The power of referendum "permits qualified electors to circulate petitions and refer legislation which has been enacted by their elected representatives to a popular vote."[2]
*1107 Redelsperger , 207 Ariz. 430, ¶ 8, 87 P.3d 843. Although "broadly construed," the right to referendum "is limited to legislative acts." Id. ¶ 9 ; Wennerstrom v. City of Mesa , 169 Ariz. 485, 488, 821 P.2d 146, 149 (1991) ("The sound rationale for limiting the referendum to legislative actions is that to permit referenda on executive and administrative actions would hamper the efficient administration of local governments."). And, because referendum permits a minority to forestall implementation of enacted legislation, it "requires strict compliance with [applicable] constitutional and statutory requirements." W. Devcor, Inc. v. City of Scottsdale , 168 Ariz. 426, 429, 814 P.2d 767, 770 (1991) (enacted legislation may reflect view of majority); A.R.S. § 19-101.01 (requiring "strict compliance with the constitutional and statutory requirements for the referendum process").
¶ 9 In Wennerstrom , our supreme court established the analysis Arizona courts must employ when determining whether an act is legislative or administrative:
Actions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative. In this connection an ordinance which shows an intent to form a permanent rule of government until repealed is one of permanent operation.
....
The test of what is a legislative and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it. Similarly, an act or resolution constituting a declaration of public purpose and making provision for ways and means of its accomplishment is generally legislative as distinguished from an act or resolution which merely carries out the policy or purpose already declared by the legislative body.
169 Ariz. at 489, 821 P.2d at 150, quoting 5 E. McQuillen, The Law of Municipal Corporations , § 16.55, at 266 (3d rev. ed. 1989). Thus, under Wennerstrom , "we must consider whether the [City's grant of a use permit to PMG] is (1) permanent or temporary, (2) of general or specific (limited) application, and (3) a matter of policy creation or a form of policy implementation." Redelsperger , 207 Ariz. 430, ¶ 15, 87 P.3d 843.
¶ 10 We consider first whether granting a use permit to PMG was permanent or temporary in nature. In Redelsperger , applying the Wennerstrom analysis, we concluded "the approval of a conditional use permit is an administrative act and therefore not subject to the referendum power." Id. ¶ 1 ; see also Sandblom v. Corbin , 125 Ariz. 178, 184, 608 P.2d 317, 323 (App. 1980) ("When a Board of Supervisors enacts a zoning ordinance or amendment thereto, it acts in a legislative capacity.... On the other hand, the issuance of a special use permit is generally recognized as an administrative act."). In doing so, we observed that although the conditional use permit at issue in that case was not issued for a specific duration and "could arguably continue indefinitely," the zoning code authorized the planning commission "to impose conditions on a conditional use permit," including requiring periodic renewal. Redelsperger , 207 Ariz. 430, ¶ 15, 87 P.3d 843. Accordingly, we conclude the determination of whether the City's grant of a use permit to PMG was permanent or temporary does not turn upon whether the City issued the permit for a specific time period, but rather whether the City could impose such a limitation. See id.
¶ 11 The trial court, therefore, erred when it determined "the action is permanent, since there is no provision for an expiration date or periodic review." The record does not reflect any dispute that the City could have granted PMG a use permit for a specific duration, or that the City could amend the use permit to *1108 impose a time limit.[3]
¶ 12 We turn now to the second part of the Wennerstrom analysis, namely whether granting a use permit to PMG was "of general or specific (limited) application." Redelsperger , 207 Ariz. 430, ¶ 15, 87 P.3d 843. On this point, there is no meaningful dispute. Both sides acknowledge the use permit granted to PMG was limited to a single parcel of land. See id. ("By definition, a conditional use permit is applicable only to a specific area...."). And, although Maricopa Citizens attempts to draw a distinction based on the large size of the property (280 acres), we do not find the distinction significant. We conclude the use permit was of limited application-a conclusion that supports finding its issuance to be an administrative act.
¶ 13 We now address the third part of the Wennerstrom analysis: whether granting a use permit to PMG was "a matter of policy creation or a form of policy implementation." Redelsperger , 207 Ariz. 430, ¶ 15, 87 P.3d 843. As in Redelsperger , the parties disagree about the significance of the decision-making body's discretion to this determination. Id. ¶ 16. Undoubtedly, "[d]iscretion is a factor of consideration when distinguishing between policy implementation and policy creation," and, in general, the greater the amount of discretion enjoyed by the body making the decision, "the more likely the act is legislative." Id. As PMG correctly points out, however, we made clear in Redelsperger that discretion "is not the ending point in our analysis," and is just one "factor to be considered." Id.
¶ 14 Our supreme court's opinion in Wennerstrom strongly supports the conclusion that discretion is but one factor to consider and is not dispositive. In Wennerstrom , after voters approved Mesa's "request for authorization to issue and sell $30 million of general obligation bonds" to improve city roads, the city council "passed a resolution 'conceptually approving' the widening of a portion of Country Club Drive from five to seven lanes 'with alignment as indicated by staff.' "[4] 169 Ariz. at 486-87, 821 P.2d at 147-48. A group of citizens then sought to compel a referendum on the council's resolutions, but the city clerk refused to process them, asserting the resolutions were administrative acts. Id. at 487, 821 P.2d at 148. In the ensuing litigation, the trial court concluded the council's "resolutions were not subject to referendum because they were not legislative actions." Id. The supreme court affirmed and, as noted above, established the analysis that courts must employ in determining whether an act is administrative or legislative. Id. at 489, 495, 821 P.2d at 150, 156. The Wennerstrom court also wrote:
Plaintiff has noted that the bond proposal itself did not specifically mention Country Club Drive, and argues from this that citizens had no notice that Mesa intended to use the bond funds to widen Country Club Drive. While it is true that the bond proposal was not focused on Country Club Drive, that fact does not alter our decision. The lack of specificity in a bond proposal grants the City much more leeway in deciding when and where to administer the bond funds. This lack of specificity may well be a valid reason to oppose a bond proposal. It does not change, however, the nature of the council's action from administrative to legislative.
Id. at 492, 821 P.2d at 153.
¶ 15 As noted, under Wennerstrom , the test of what is legislative and what is administrative "has further been said to be whether the proposition is one to make new law or *1109 to execute law already in existence," and an act is administrative "if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it." Id. at 489, 821 P.2d at 150, quoting 5 E. McQuillen, supra , § 16.55, at 266. In this instance, the City created policy and acted in a legislative capacity when it initially adopted the Old Code and then, upon later adopting the New Code, retained the Old Code's designations and regulations concerning the PMG property. However, when it approved PMG's use permit, thereby allowing a use of the property that had been expressly identified in the Old Code, the City merely executed already existing policy and, therefore, acted in an administrative capacity.
¶ 16 We are unpersuaded by Maricopa Citizens' reliance upon State v. Oakley , 180 Ariz. 34, 881 P.2d 366 (App. 1994). In Oakley , we concluded that the Yavapai County Board of Supervisors' "adoption of the boundaries of a [community college] election district is a legislative act." Id. at 37-38, 881 P.2d at 369-70. There, however, although the authority to establish the districts was delegated by statute, the board enjoyed nearly absolute discretion and was "free to fashion districts as it [saw] fit without reference to any particular legislative formula." Id. at 38, 881 P.2d at 370. We agree with PMG that this stands in "sharp contrast" to the circumstances at hand, in which the City adhered to an existing procedure to issue a permit for a use expressly identified in the Old Code designation applicable to PMG's property.
¶ 17 We are similarly unpersuaded by Maricopa Citizens' reliance upon Bartolomeo v. Town of Paradise Valley , 129 Ariz. 409, 631 P.2d 564 (App. 1981). In that case, we concluded "the granting or the refusal to grant rezoning by special use permit is a legislative function." Id. at 416, 631 P.2d at 571. Bartolomeo , however, is distinguishable because the Town of Paradise Valley was entirely residential in its zoning, with one-acre lots, and used the issuance of special use permits as a means of rezoning. Id. ; see also Pioneer Trust Co. v. Pima County , 168 Ariz. 61, 66, 811 P.2d 22, 27 (1991) (conditional approval of rezoning subject to referendum). Here, there was no rezoning; as noted, the City, in accordance with existing procedure, granted a use permit for a use expressly allowed by the Old Code. See Redelsperger , 207 Ariz. 430, ¶ 21, 87 P.3d 843 ("[T]he issuance or denial of a conditional use permit is a mean or method of implementing the general policy already set forth in the Zoning Ordinance.").
¶ 18 Accordingly, we conclude the issuance of the use permit to PMG was an administrative act, and was not subject to referendum.[5] The trial court erred by concluding to the contrary.
Disposition
¶ 19 For the foregoing reasons, we reversed the judgment of the trial court and remanded the case to the trial court to grant judgment in favor of appellants.

The parties subsequently stipulated that PMG be designated the real party in interest.

Another form of referendum, which is not relevant here, "permits the legislature to refer a legislative enactment to a popular vote." Redelsperger , 207 Ariz. 430, ¶ 8, 87 P.3d 843 ; Ariz. Const. art. IV, pt. 1 § 1 (3).

Maricopa Citizens asserts Redelsperger reflects a misunderstanding of Wennerstrom , and that Wennerstrom "clearly indicates that it is the 'actions' and 'decisions' of a city council that are the critical part of the inquiry, not the actions that the city council could have decided to take." In support, it offers an abridged quote from Wennerstrom : "Other states have utilized various tests when distinguishing between administrative and legislative decisions: 'Actions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative.' " 169 Ariz. at 489, 821 P.2d at 150, quoting 5 E. McQuillen, supra , § 16.55, at 266. We disagree that this language from Wennerstrom draws the distinction Maricopa Citizens asserts.

The council subsequently passed two additional resolutions concerning the improvement of Country Club Drive. Id. at 487, 821 P.2d at 148.

Because we conclude the City's grant of a use permit to PMG was administrative and therefore not subject to referendum, we need not address whether the petition signature sheets strictly complied with §§ 19-101(A) or 19-121(A)(5), or whether the Clerk had authority to disqualify twelve signatures because the city or zip code was not listed.